No. 02-137

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 163

IN RE THE MATER OF L.M.A.T and B.L.F.T.,

    Youths in Need of Care.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable Michael C. Prezeau, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Amy N. Guth, Libby, Montana (natural father)

    For Mother:

        Scott Spencer, Libby, Montana (natural mother)

    Guardian ad Litem:

        Ann C. German, Libby, Montana

    For Respondent:

        Mike McGrath, Montana Attorney General, Jennifer M. Anders, Assistant
Montana Attorney General; Bernard G. Cassidy, Lincoln County Attorney,
Libby, Montana

Submitted on Briefs: June 13, 2002

Decided:  July 25, 2002

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1      Donald, the natural father of L.M.A.T. and B.L.F.T., appeals from two Nineteenth Judicial District Court orders that were entered during child protection proceedings for his daughters.  Although the State had petitioned for permanent legal custody and termination of parental rights, following the evidentiary hearing,  the District Court did not proceed on the issue of termination, but rather entered an order adjudicating L.M.A.T. and B.L.F.T. as youths in need of care and granting the Department of Public Health and Human Services (DPHHS) temporary legal custody for six months.  The court also granted DPHHS the authority to forego reunification efforts with Donald.  On appeal, Donald contends he did not receive proper notice of the proceedings prior to the filing of the State's Petition for Permanent Legal Custody and Termination of Parental Rights with Right to Consent to Adoption (hereinafter, Petition for Permanent Legal Custody) and alleges the State's Petition for Permanent Legal Custody and the District Court's order granting DPHHS temporary legal custody did not meet statutory notice requirements.  Donald also contends the District Court failed to conduct a timely show cause hearing following the State's Petition for Permanent Legal Custody and appeals the District Court's order authorizing DPHHS to forego reunification efforts with him, arguing that the court failed to make sufficient findings.  We affirm.

¶2      Donald presents the following issues on appeal:

        1.  Whether failure to personally serve the father, who was incarcerated in another state, with notice of proceedings prior to filing a petition for permanent legal custody and termination of parental rights constitutes reversible error;

2

2. Whether the petition for permanent legal custody and subsequent order granting temporary legal custody, contained the required statutory notices;

3. Whether the District Court failed to conduct a timely show cause hearing; and

4. Whether the District Court erred when it granted the State's request for determination that preservation or reunification services for the father were unnecessary.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Following reports of abuse and neglect, the State filed a Petition for Temporary Investigative Authority (TIA) and Protective Services on November 17, 2000, and L.M.A.T. and B.L.F.T. were removed from their mother's home. L.M.A.T. (now 5 years old) and B.L.F.T. (nearly 3 years old) remain in foster care where they have been since December of 2000. Throughout these proceedings, Donald has been incarcerated in Washington State, having been found guilty on March 2, 2000, of the attempted rape of a child in the second degree.

¶4 On November 21, 2000, a Summons and Order to Show Cause and a copy of the November 17, 2000 Petition for TIA were served on Donald by mail at a corrections facility in Airway Heights, Washington. Following a show cause hearing on December 4, 2000, during which the children's mother, Catherine, did not oppose the TIA petition, the District Court entered an order granting TIA to DPHHS for 90 days. The accompanying Certificate of Service listed Donald's address as "unknown," and the record is not clear whether he received a copy of this December 6, 2000 order.

¶5 Following a review hearing on February 26, 2001, the District Court continued the TIA for two weeks, and re-set the hearing for March 12, 2001. A copy of the District Court

3

order continuing the TIA was served on Donald by mail at a corrections facility in Aberdeen, Washington. On March 2, 2001, the State filed a Petition for Temporary Legal Custody. On that same day, Donald was served by mail at the Aberdeen facility with a Summons and Order to Show Cause for the March 12, 2001 hearing, and also copies of the Petition for Temporary Legal Custody and the proposed treatment plan for Catherine.

¶6 After another continuance, the review hearing commenced on March 19, 2001, during which Catherine agreed to the Petition for Temporary Legal Custody and her treatment plan. On March 21, 2001, the District Court entered an Order Granting Temporary Legal Custody to DPHHS for a six-month period. A Certificate of Service, dated March 26, 2001, indicates this order and a copy of Catherine's treatment plan were served on Donald by mail at his Aberdeen address.

¶7 At a review hearing on September 17, 2001, the State requested a 90-day extension of temporary legal custody, since it intended to file for permanent legal custody. The District Court granted the extension and appointed indigent counsel for Catherine. On September 18, 2001, the State filed the Petition for Permanent Legal Custody, and attached a copy of Donald's Judgment and Sentence and Warrant of Commitment from Washington. Also on September 18, 2001, Amy Guth, who had been acting as Guardian Ad Litem for L.M.A.T. and B.L.F.T. since November 20, 2000, filed a Motion to Appoint Counsel, requesting that she be appointed to represent Donald pursuant to the public defender contract. The District Court granted this motion the next day.

¶8     The District Court entered an order on September 19, 2001, granting continued temporary legal custody to DPHHS for a period of 90 days. This order was served on Donald by mail at his Aberdeen address. On that same day, the District Court also issued a Summons and Order to Show Cause relating to the State's Petition for Permanent Legal Custody, setting the hearing date for November 5, 2001. The Summons and Order to Show Cause was personally served on Donald at the Aberdeen correction facility on October 2, 2001. Donald's appointed counsel was served by mail with copies of the Summons and Order to Show Cause and the Petition for Permanent Legal Custody on September 19, 2001.

¶9     During the show cause hearing on November 5, 2001, Catherine was prepared to relinquish her rights as to B.L.F.T., but wished to continue her treatment plan and possibly reunite with L.M.A.T. Donald's counsel also appeared, and represented that Donald contested termination of his parental rights as to both girls. Donald's counsel also informed the court that Donald would be incarcerated in Washington until 2004, at which time he would presumably be eligible for parole. On November 8, 2001, the District Court granted continued temporary legal custody and scheduled the hearing on the State's Petition for Permanent Legal Custody for January 4, 2002.

¶10    Catherine did not appear on January 4, 2002, so the District Court vacated the hearing date and continued temporary legal custody pending further adjudication of whether L.M.A.T. and B.L.F.T. were youths in need of care. At this time, a letter from Donald was filed with the court, wherein he expressed an interest in reuniting with his children upon release from prison.

¶11 On January 24, 2002, the State filed a Request for Determination, asking the District Court to determine that preservation or reunification services need not be provided as they relate to Donald. The State based its request on Donald's conviction for attempted rape of a child in the second degree and his continued incarceration in Washington.

¶12 The hearing on the State's Petition for Permanent Legal Custody was held on January 24, 2002. At the hearing, Donald's counsel objected to the proceedings as untimely. The court overruled the objection and upon the request of the State and in light of our recent decision, *In re T.C.*, 2001 MT 264, 307 Mont. 244, 37 P.3d 70 (district court improperly terminated parent's rights without first adjudicating whether children were youths in need of care), the hearing proceeded on allegations that the children were youths in need of care and request for temporary legal custody to DPHHS.

¶13 During the hearing, Beverly Miller (Miller), a social worker on the case, explained that DPHHS requested that it be excused from providing preservation or reunification services for Donald because B.L.F.T. had never seen Donald and Donald could not work on beginning a relationship with either child until he was released. Miller testified that Donald was convicted in Washington for attempted sexual intercourse with an unrelated thirteen year old. Miller told the court that Donald was sentenced to 89 months, and after credit for time served, he had 78 months (six years, six months) to serve beginning April 2000, and thus would not be discharged from his sentence until 2006. Miller also explained that if the children had to wait until Donald was available to begin parenting, the children's foster parents may not form necessary attachments, which would lead to less bonding for the

6

children and a loss of trust. The court received copies of Donald's Washington Judgment and Sentence and Warrant of Commitment, which indicated he was arrested on June 4, 1999 and convicted on March 2, 2000. Donald remains incarcerated in Washington, serving his sentence. Donald's counsel presented no evidence and at the end of the hearing, moved to dismiss on grounds of failure of proof. The court denied the motion

¶14 On January 30, 2002, the District Court entered an Order Authorizing Department to Forego Reunification Efforts with Donald, noting that Donald's conviction of attempted rape of a child in the second degree was an "aggravated circumstance," as defined in § 41-3-423, MCA (2001). The District Court also entered an order adjudicating L.M.A.T. and B.L.F.T. as youths in need of care and granting temporary legal custody to DPHHS for six months. It is from these two orders that Donald appeals. The children's mother has not appealed any of the protection proceedings.

## STANDARD OF REVIEW

¶15 This Court reviews a district court's findings of fact to determine whether the findings are clearly erroneous. *See In re A.M.*, 2001 MT 60, ¶ 33, 304 Mont. 379, ¶ 33, 22 P.3d 185, ¶ 33 (citing *In re J.N.*, 1999 MT 64, ¶ 11, 293 Mont. 524, ¶ 11, 977 P.2d 317, ¶ 11). A finding of fact is clearly erroneous if it is not supported by substantial evidence; if the district court misapprehended the effect of the evidence; or, if after reviewing the record, this Court is left with a definite and firm conviction that the district court made a mistake. *In re A.M.*, ¶ 33 (citation omitted). This Court reviews a district court's conclusions of law to determine whether the court interpreted the law correctly. *In re A.M.*, ¶ 33 (citation omitted). We

7

review transfer of a child's custody from his or her parents to DPHHS for abuse of discretion since such a transfer of custody is dependent upon an initial discretionary determination that the child is abused or neglected. *See Matter of Custody of J.H.*, 1998 MT 128, ¶ 15, 289 Mont. 111, ¶ 15, 958 P.2d 1191, ¶ 15 (citing *Matter of C.M.* (1997), 281 Mont. 183, 186, 932 P.2d 1063, 1065).

## DISCUSSION

### Issue 1

¶16 **Does failure to personally serve the father, who was incarcerated in another state, with notice of proceedings prior to filing a petition for permanent legal custody and termination of parental rights constitute reversible error?**

¶17 Donald argues that the State failed to properly serve him with notice of any of the proceedings prior to the State's Petition for Permanent Legal Custody, which was filed on September 18, 2001, and served on his appointed counsel, September 19, 2001 (Donald was personally served on October 2, 2001, with the District Court's September 19, 2001 Summons and Order to Show Cause on the Petition for Permanent Legal Custody). Donald contends those previous proceedings were therefore void as applied to him because he received notice of those prior proceedings by mail, not by personal service.[1] In support of

---

[1] In his reply brief, Donald asserts for the first time on appeal that the District Court did not have jurisdiction over Donald until he was personally served on October 2, 2001. We will not address an issue raised for the first time in a reply brief. *See Unified Industries, Inc. v. Easley,* 1998 MT 145, ¶ 28, 289 Mont. 255, ¶ 28, 961 P.2d 100, ¶ 28 (citations omitted); and Rule 23(c), M.R.App.P. Accordingly, we decline to address this argument.

8

his contention, Donald cites §§ 41-3-422(4)-(7), MCA (2001)[2]. Section 41-3-401, MCA (1999), provides in relevant part:

> (3) A petition alleging abuse or neglect is a civil action brought in the name of the state of Montana. The Montana Rules of Civil Procedure apply except as modified in this part. Proceedings under a petition are not a bar to criminal prosecution.
> (4) The parents or parent, guardian, or other person or agency having legal custody of the youth named in the petition, if residing in the state, must be served personally with a copy of the petition and summons at least 5 working days before the date set for hearing. If the person or agency cannot be served personally, the person or agency may be served by publication in the manner provided by the Montana Rules of Civil Procedure for other types of proceedings.

¶18     In interpreting a statute, we first look to the plain meaning of the words it contains. *City of Great Falls v. DPHHS*, 2002 MT 108, ¶ 16, 309 Mont. 467, ¶ 16, 47 P.3d 836, ¶ 16 (citation omitted). Section 41-3-401(4), MCA (1999) (now renumbered at § 41-3-422(6), MCA (2001)), provides that personal service is required for parents "if residing in the state." At no time during these proceedings has Donald resided in Montana. Therefore, the State was not required under § 41-3-401(4), MCA (1999), to personally serve Donald in these proceedings. While these provisions do not specify what method of service is required for parents living outside the State, we conclude, and the State concedes, that when the

[2]Except for subsection (5), which was inserted in 2001, these subsections were previously found at §§ 41-3-401(3)-(5), MCA (1999), and were renumbered and amended in some minor respects in 2001. We note that § 41-3-422, MCA (2001), became effective as of October 1, 2001, and accordingly, we will apply § 41-3-401, MCA (1999), for consistency with the remainder of this Opinion.

9

whereabouts of parents or guardians having legal custody are known, the better practice is to personally serve them with a copy of all petitions in accordance with § 41-3-422, MCA (2001).

¶19 While we stress the importance of proper notice in all child protection proceedings and recognize that Donald received personal service of these proceedings only once, that is not dispositive of the issue before us. The District Court orders that Donald seeks to invalidate would include those orders granting and continuing the TIA and those orders granting and extending temporary legal custody to DPHHS. Although Catherine, who had physical custody of the children, disputed some of the factual allegations, she did not oppose the State's petition for TIA, and agreed to the petition for temporary legal custody and her treatment plan. At the September 17, 2001 hearing, Catherine did not object to the State's request to continue temporary legal custody, but stated she would contest termination of parental rights. Donald was incarcerated at all times during these proceedings. Therefore, it would have been impossible for him to exercise his legal custodial rights to parent L.M.A.T. and B.L.F.T. during this time frame.

¶20 Moreover, while the evidentiary hearing on January 24, 2002, was initially set to consider the State's Petition for Permanent Legal Custody and Termination of Parental Rights, the District Court did not make such a determination, but rather adjudicated the children as youths in need of care and granted DPHHS temporary legal custody for a six-month period. The court recognized our recent holding from *In re T.C.*, where we held that a stipulation to temporary legal custody is not the equivalent of a stipulation that a child is a

youth in need of care, and without such a specific adjudication, a district court cannot terminate parental rights. *See In re T.C.*, ¶¶ 18-19. Significantly, the District Court has not ordered termination of either parent's rights in any of these proceedings. The court scheduled a hearing on the Petition for Permanent Legal Custody and Termination of Parental Rights for July 16, 2002. The court also set a permanency hearing for February 22, 2002, in light of its determination that DPHHS could forego reunification efforts with Donald. However, this hearing date has since been vacated by the District Court, since it was divested of jurisdiction upon Donald's appeal to this Court.

¶21    This Court has repeatedly stated that "no civil case shall be reversed by reason of error which would have no significant impact upon the result; if there is no showing of substantial injustice, the error is harmless." *In re J.M.*, 2001 MT 51, ¶ 16, 304 Mont. 303, ¶ 16, 21 P.3d 618, ¶16 (citing *In re A.N.*, 2000 MT 35, ¶ 55, 298 Mont. 237, ¶ 55, 995 P.2d 427, ¶ 55). We conclude that Donald failed to demonstrate how personal service of the proceedings prior to the Petition for Permanent Legal Custody would have significantly impacted these proceedings. Nor has Donald shown that invalidation of any of the proceedings would have a significant impact on his parental rights, since none of the proceedings prior to the State's Petition for Permanent Legal Custody sought to terminate Donald's parental rights, and neither parent's rights have been terminated by the District Court. Moreover, formal adjudication of the children as youths in need of care did not occur until January of 2002, at which time Donald had been personally served and was represented by counsel.

11

Accordingly, we conclude that failure to personally serve Donald notice of those proceedings prior to filing the Petition for Permanent Legal Custody was not reversible error.

**Issue 2**

¶22    **Did  the petition for permanent legal custody and subsequent order granting temporary legal custody, contain the required statutory notices?**

¶23    Donald argues that because the State's Petition for Permanent Legal Custody and the District Court's January 30, 2002 orders did not contain the notices mandated by §§ 41-3-422(13) and (14), MCA (2001), they are invalid and cannot be enforced.  Subsection (13) requires DPHHS, when serving a petition in an abuse and neglect proceeding, to advise parents or legal guardians of their right to counsel and right to contest the allegations, as well as the required timeliness for hearings.  *See* § 41-3-422(13), MCA (2001).  Similarly, when a District Court issues an order in an abuse and neglect proceeding, it is required to include notice concerning statutory requirements for timeliness of hearings, presumptions of the best interests of the child, and that completion of a treatment plan does not guarantee return of a child.  *See* § 41-3-422(14), MCA (2001).

¶24    However, these subsections were not applicable to the child protection proceedings concerning L.M.A.T. and B.L.F.T.  When the 2001 Legislature added subsections (13) and (14) to § 41-3-422, MCA, it provided the following savings clause: "This act does not affect rights and duties that matured, penalties that were incurred, or *proceedings that were begun before* the effective date of this act."  *See* 2001 Mont. Laws Ch. 281, Sec. 19.  The Compiler's Comments for § 41-3-422, MCA (2001), indicate the effective date of the Chapter 281 Amendments was October 1, 2001.  Therefore, because the child protection proceedings for

12

L.M.A.T. and B.L.F.T. were initiated by the State's Petition for TIA and Protective Services on November 17, 2000, §§ 41-3-422(13) and (14), MCA (2001), were not applicable. Accordingly, neither the State nor the District Court committed reversible error by omitting the notice provisions.

**Issue 3**

¶25 **Did the District Court fail to conduct a timely show cause hearing?**

¶26 Donald argues that under § 41-3-432, MCA (2001), the District Court was required to conduct a show cause hearing within ten days of September 18, 2001, the day the State filed its Petition for Permanent Legal Custody. Section 41-3-432(1)(a), MCA (2001), provides that "[a] show cause hearing must be conducted within 10 days, excluding weekends and holidays, of the filing of an initial child abuse and neglect petition unless otherwise stipulated by the parties pursuant to 41-3-434 or unless an extension of time is granted by the court." Donald contends that, since the District Court's Summons and Order to Show Cause on the Petition for Permanent Legal Custody was the first document personally served on him, the petition qualified as the "initial" pleading as contemplated by the statute, and thus he argues the court's hearing on November 5, 2001, was held well past the ten-day requirement.

¶27 We conclude that the petition for permanent legal custody and termination of parental rights did not constitute an "initial" filing. Here, the initial filing was the State's Petition for TIA and Protective Services, filed on November 17, 2000. Accordingly, § 41-3-403(1)(c), MCA (1999), applied. It provides that upon the filing of a petition for temporary investigative authority and protective services, the court must conduct a show cause hearing

13

within twenty days of issuing an order granting relief as required for the immediate protection of a child. Section 41-3-403(1)(c), MCA (1999). Following the State's petition for TIA and protective services, the District Court conducted a show cause hearing on December 4, 2000, which fell within the twenty-day requirement mandated by § 41-3-403(1)(c), MCA (1999).

¶28 Moreover, the statute Donald relies on, § 41-3-432, MCA (2001), became effective on October 1, 2001. *See* Compiler's Comments, § 41-3-432, MCA (2001). Therefore, even if we accept Donald's argument that the Petition for Permanent Legal Custody was the "initial" filing, § 41-3-432, MCA (2001), would not apply, since it was not in effect when the State filed the petition on September 18, 2001.

¶29 For the foregoing reasons, we conclude the District Court did not fail to conduct a timely show cause hearing.

## Issue 4

¶30 **Did the District Court err when it granted the State's request for determination that preservation or reunification services for the father were unnecessary?**

¶31 Generally, DPHHS must make reasonable efforts to reunite a family after the children have been removed from the home. *See* § 41-3-423(1), MCA (2001) (formerly § 41-3-403(2), MCA (1999)). However, a district court "may make a finding that [DPHHS] need not make reasonable efforts to provide preservation or reunification services if the court finds that the parent has subjected a child to aggravated circumstances, including but not limited to abandonment, torture, chronic abuse, or sexual abuse or chronic, severe neglect of a child." Section 41-3-423(2)(a), MCA (2001) (formerly § 41-3-403(2)(a), MCA (1999)).

14

¶32 In 2001, the Legislature added that a court's "finding that preservation or reunification services are not necessary pursuant to this section must be supported by clear and convincing evidence." *See* 2001 Mont. Laws Ch. 281, Sec. 8, adding § 41-3-423(4), MCA (2001). However, like §§ 41-3-422(13) and (14), MCA (2001), (See ¶ 24 herein), this amendment did not affect rights and duties related to proceedings that began prior to the October 1, 2001 effective date, and therefore would not apply in these child protection proceedings. While § 41-3-403(2), MCA (1999), allowed a district court to make a finding regarding the necessity of preservation and reunification efforts, it did not provide any guidance as to the State's burden of proof.

¶33 It is well-established that a natural parent's right to care and custody of his child is a fundamental liberty interest which must be protected by fundamentally fair procedures. *See In re A.C.*, 2001 MT 126, ¶ 20, 305 Mont. 404, ¶ 20, 27 P.3d 960, ¶ 20 (citations omitted). Accordingly, in regard to the statutorily-required findings supporting termination of parental rights, we have stated that the burden is on the party seeking termination to demonstrate by clear and convincing evidence that every requirement set forth in the statute has been satisfied. *In re A.C.*, ¶ 20 (citation omitted). While we recognize that in these proceedings neither parent's rights have been terminated, we conclude that because a court's determination that reunification services are not required may necessarily impact termination of a parent's rights, the district court's findings under § 41-3-403(2), MCA (1999), must be supported by clear and convincing evidence. In cases involving the termination of parental rights,

> clear and convincing proof is simply a requirement that a preponderance of the
> evidence be definite, clear, and convincing, or that a particular issue must be

15

clearly established by a preponderance of the evidence or by a clear preponderance of proof. This requirement does not call for unanswerable or conclusive evidence. The quality of proof, to be clear and convincing, is somewhere between the rule in ordinary civil cases and the requirement of criminal procedure-that is, it must be more than a mere preponderance but not beyond a reasonable doubt.

*In re E.K.*, 2001 MT 279, ¶ 32, 307 Mont. 328, ¶ 32, 37 P.3d 690, ¶ 32 (citation omitted).

¶34 We have recently clarified that when reviewing a district court's findings in a termination of parental rights case, even for clear and convincing evidence, the applicable standard of review remains the same; "[t]his Court reviews a district court's findings that the statutory criteria supporting termination are met to determine whether those findings are clearly erroneous--that is, whether they are supported by substantial evidence, whether the district court misapprehended the effect of the evidence, or whether this Court is left with a definite and firm conviction that the district court made a mistake." *In re A.C.*, ¶ 36 (citations omitted).

¶35 We conclude that the District Court's finding that DPHHS was not required to provide reunification services was supported by substantial and uncontroverted evidence. At the evidentiary hearing on January 24, 2002, the District Court admitted copies of Donald's Judgment and Sentence and Warrant of Commitment from Washington State, which provided clear and convincing evidence that Donald was convicted of attempted rape of a child in the second degree and was sentenced to a term of 89 months, with credit for time served. Without objection, the court heard testimony from Miller that Donald's conviction was a result of him attempting to have sexual intercourse with a thirteen year old, and that he was not related to the victim. Miller also explained that waiting for Donald to discharge his

16

sentence would negatively affect the required bonding the children needed. Donald did not present any evidence rebutting the assertions by Miller, nor did he assert that his Washington conviction was invalid or not yet final.

¶36 Contrary to Donald's contentions, the State was not required to present evidence as to the finality of his conviction. In criminal appeals, we have consistently held that "prior convictions are presumptively valid, and a defendant who challenges the validity of his prior conviction during a collateral attack has the burden of producing direct evidence of its invalidity." *State v. Anderson*, 2001 MT 188, ¶ 20, 306 Mont. 243, ¶ 20, 32 P.3d 750, ¶ 20 (citing *State v. Okland* (1997), 283 Mont. 10, 18, 941 P.2d. 431, 436) (lack of direct evidence as to a conviction's validity is not sufficient to shift the burden to the State to prove validity). Nor was the State required to present evidence concerning the circumstances of the conviction. The plain language of § 41-3-403(2)(a), MCA (1999), allows a court to conclude preservation or reunification services are not required if it finds one of the criteria is met. Here, the court made the necessary finding that Donald's conviction of attempted rape of a child in the second degree qualified as "subject[ing] a child to aggravated circumstances." Section 41-3-403(2), MCA (1999), includes "sexual abuse" of a child as an example of "aggravated circumstances." We conclude that a conviction for attempted rape of a child met this definition, and the District Court's findings were not clearly erroneous.

¶37 Accordingly, we conclude the District Court did not err when it granted the State's request for determination that preservation or reunification services for Donald were unnecessary.

¶38   We affirm.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE