FILED

04/14/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0418

DA 19-0418

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2020 MT 87

IN THE MATTER OF:

A.L.P,

A Youth in Need of Care.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DN-18-48
Honorable Michael G. Moses, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Kelly M. Driscoll, Montana Legal Justice, PLLC, Missoula, Montana

For Appellee:

Timothy C. Fox, Montana Attorney General, Jonathan M. Krauss, Assistant
Attorney General, Helena, Montana

Scott Twito, Yellowstone County Attorney, Corbit Harrington, Deputy
County Attorney, Billings, Montana

Submitted on Briefs:  February 19, 2020

Decided:  April 14, 2020

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1      J.P. ("Father") appeals the Thirteenth Judicial District Court's order terminating his parental rights to his child, A.L.P.  Father asserts that the court erred when it concluded that Father failed to complete an appropriate treatment plan and that his condition was unlikely to change within a reasonable time.  We hold that the District Court committed harmless error when it found Father's treatment plan unsuccessful due solely to his incarceration.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2      In August 2017, the Department of Health and Human Services Child and Family Services Division ("Department") became involved with the family due to concerns of B.A.'s ("Mother") methamphetamine use while she was pregnant with A.L.P.[1]  The parties entered into a voluntary protection plan, A.L.P. remained with the parents, and the Department continued its intervention with the family.  A month after A.L.P. was born, Father was arrested and incarcerated for probation violations in an unrelated matter.  He would remain incarcerated for the duration of the proceedings in this case.  When Mother began testing positive for methamphetamine, the Department filed a petition on February 8, 2018, for emergency protective services, adjudication of A.L.P. as a youth in need of care, and temporary legal custody due to A.L.P.'s risk of physical neglect resulting from Mother's methamphetamine use and Father's incarceration.  The petition noted that

---

[1] The District Court terminated Mother's parental rights in the same proceeding.  Her parental rights are not at issue in this appeal.

"Birth father [] is currently incarcerated and enrolled in the Start Program." At the show-cause hearing, Father stipulated to the Department's petition without agreeing to the facts as alleged in the petition or affidavit. The parties indicated to the court that Father was in the START program with the "possible" transition into prerelease. Twenty days later, the District Court issued a written order adjudicating A.L.P. as a youth in need of care, granting the Department temporary legal custody, and directing the Department to develop treatment plans for the parents. A.L.P. was placed in non-kinship foster care.

¶3     A.L.P. was admitted to the hospital the following month due to breathing problems. She was diagnosed with severe laryngotracheobronchomalacia, a condition that makes breathing more difficult and increases risk for more serious respiratory infections. A.L.P. underwent three to four hours of intense treatment per day to keep her lungs open and clear. In one report, her physician highlighted the seriousness of the condition, stating: "The severity of [her] lung condition requires an absolute commitment to her treatment plan. . . . Her caretakers must understand the necessity of following the prescribed treatment plan and ensure that she is followed by her healthcare team per their recommendations."

¶4     In July 2018, the Department proposed—and the District Court approved—a treatment plan for Father to complete while incarcerated. The plan required Father to complete a number of tasks designed to address the conditions that led to A.L.P.'s removal, including attending parenting classes and attending visits with A.L.P. Father did not object to the treatment plan. At the time of the proposed treatment plan, Father informed the

Department that he had appealed his probation revocation to the Montana Supreme Court and advised the court that he was expecting to have his parole hearing in late 2019 or early 2020.

¶5 Father indicated to the Department's caseworker that he had taken measures to comply with his treatment plan while incarcerated. He had completed a chemical dependency evaluation; submitted a request to the prison board for a psychological evaluation and counseling; completed a parenting class; and would forward to the Department the results of his drug tests conducted by the prison. Father also reported that he had undergone an anger assessment completed by prison staff and that further treatment was not recommended following that assessment.

¶6 According to his caseworker, Father failed to comply with all the requirements of his treatment plan. She noted that although he completed two family engagement meetings via conference call, he did not provide the Department with copies of his chemical dependency evaluation, drug test results, or anger management assessment, and did not complete a psychological evaluation. She observed that due to his incarceration, Father was unable to visit A.L.P. or to secure appropriate housing and employment. She concluded that Father had not "successfully and completely completed his treatment plan," had not demonstrated his ability to parent the child, and was "in no position to provide any kind of home or care and won't be for some time." Upon the caseworker's recommendation, the Department filed a petition for termination of parental rights on November 26, 2018.

¶7      The District Court held a termination hearing on March 27, 2019. The Department caseworker testified that she had three contacts with Father during the Department's intervention—a phone call from him and two conference calls. She believed Father had anger issues. She confirmed that he told her the prison would not let him undergo another anger assessment because he already had completed two in prison. She testified that Father also had advised her that he requested evaluations, counseling, and parenting classes as required by his treatment plan, but she said she had not received "any verification of him completing any of those." She confirmed Father's assertion that he believed he would be eligible for release in January 2020. When asked about Father's visitation requirement under his treatment plan, she testified that he was not provided an opportunity to have visits with A.L.P. due to his incarceration because "[h]e's been in other towns and counties." According to the caseworker, the conduct that made Father unfit, unable, or unwilling to parent was his ongoing incarceration.

¶8      Father testified that he had completed required tasks under his treatment plan. He asserted that he provided copies of proof of his compliance to the Department. Father testified that he had one phone call with the Department in which he discussed the treatment plan and that the contact on the two family engagement meeting conference calls was brief. He expressed that he did not believe he had been given a "fair shake" in his treatment plan and he had tried everything he could and completed every program that was available to him at the prison in order to comply. Father anticipated his first parole hearing would be in November 2019 and was hopeful for release in late 2019 or early 2020. He asked the

5

court to extend temporary legal custody for a second time to allow him additional time to work on his treatment plan and to not terminate his parental rights.

¶9 At the termination hearing, the District Court stated that it was accepting Father's testimony concerning his completion of a chemical dependency evaluation, parenting classes, anger assessment, and his programming at the prison, but that Father nonetheless had not completed all of the tasks in the treatment plan, rendering the plan unsuccessful. The court observed that Father had not been able to parent A.L.P. since she was a month old because he had been incarcerated. It concluded that reunification was not in A.L.P.'s best interests because of her serious medical issues.

¶10 The District Court terminated Father's rights, finding that Father had an appropriate treatment plan designed to rehabilitate his parenting skills for the purpose of reuniting him with A.L.P. The court found further that Father had not successfully completed the plan—he had failed to maintain contact with A.L.P. and had been incarcerated for over a year, with the prospect of being available to parent several months away. The court specifically noted that there was no evidence that Father could assume the intensive care required by A.L.P. in the reasonable future. Referencing Father's suggestion that he soon would be eligible for parole, the District Court stated:

> It was a long-term confinement of ten years from the district judge in Lewis and Clark County as a result of your probation violations and your violations of the conditions of your previous sentence. Once again, that was a long-term confinement as set forth by the judge in Helena as testified to by [Father] today to include a total of ten years with none suspended, which suggests [Father] will be on parole for a long time. If, indeed, [he is] paroled.

6

¶11    It found clear and convincing evidence to conclude that A.L.P. was adjudicated as a youth in need of care, that Father had not successfully completed his treatment plan, that his conduct or condition was unlikely to change within a reasonable time, and that it was in the best interests of A.L.P. to terminate Father's parental rights.

## STANDARDS OF REVIEW

¶12    We review a district court's decision to terminate parental rights for an abuse of discretion. *In re R.L.*, 2019 MT 267, ¶ 12, 397 Mont. 507, 452 P.3d 890 (citing *In re A.S.*, 2016 MT 156, ¶ 11, 384 Mont. 41, 373 P.3d 848; *In re K.A.*, 2016 MT 27, ¶ 19, 382 Mont. 165, 365 P.3d 478).  The Department carries the burden of proving by clear and convincing evidence that the statutory criteria for termination have been satisfied. *In re R.L.*, ¶ 12 (quoting *In re K.L.*, 2014 MT 28, ¶ 14, 373 Mont. 421, 318 P.3d 691).  This Court reviews a district court's findings of fact for clear error and its conclusions of law for correctness. *In re R.L.*, ¶ 12 (citing *In re M.V.R.*, 2016 MT 309, ¶ 23, 385 Mont. 448, 384 P.3d 1058).

## DISCUSSION

¶13    A parent's right to parent a child is a fundamental liberty interest. *In re R.L.*, ¶ 17. A district court "must adequately address each applicable statutory requirement" prior to terminating parental rights. *In re R.L.*, ¶ 17 (citing *In re Matter of A.T.*, 2003 MT 154, ¶ 10, 316 Mont. 255, 70 P.3d 1247).  Under § 41-3-607(2), MCA, "[t]he termination of a parent-child legal relationship may be considered only after the filing of a petition pursuant to 41-3-422 alleging the factual grounds for termination pursuant to 41-3-609."

¶14 There are several circumstances for which a court may terminate parental rights under § 41-3-609(1), MCA. Relevant to the Department's petition here, § 41-3-609(1)(f), MCA, requires that a district court find, by clear and convincing evidence, that the child is a youth in need of care and the court finds that: "(1) an appropriate court-approved treatment plan was not complied with by the parents or was not successful; and that (2) the conduct or condition of the parents rendering them unfit was unlikely to change within a reasonable time." *In re X.M.*, 2018 MT 264, ¶ 18, 393 Mont. 210, 429 P.3d 920 (citing §§ 41-3-609(1)(f)(i)-(ii), MCA).

¶15 A treatment plan specifies the actions a parent must take to resolve the conditions that resulted in the need for protective services for the child. Section 41-3-102(31), MCA. Partial or substantial compliance with a treatment plan is insufficient to preclude termination of parental rights. *In re D.F.*, 2007 MT 147, ¶ 30, 337 Mont. 461, 161 P.3d 825. Even if a parent has completed all required tasks, a district court still may find a treatment plan unsuccessful. *In re J.B.*, 2016 MT 68, ¶ 20, 383 Mont. 48, 368 P.3d 715 (citing *In re D.F.*, ¶ 36).

¶16 Father first argues that he was not given an appropriate treatment plan as required by § 41-3-609(1)(f)(i), MCA. Recognizing that he failed to object to the treatment plan in the first instance, he asserts that he preserved the issue for appellate review when he stated at the termination hearing that he had not been given a "fair shake" to complete his treatment plan. The Department responds that an appropriate treatment plan was approved for Father without objection, and Father actively participated in the plan.

¶17 This Court has consistently held that a parent who does not object to a treatment plan waives the right to argue on appeal that the plan was not appropriate. *In re X.B.*, 2018 MT 153, ¶ 24, 392 Mont. 15, 420 P.3d 538. Father admits that he did not object because one of his grounds for his ineffective assistance of counsel claim is that counsel failed to object to inappropriate treatment plan tasks. He urges us to invoke plain error review to hold the court in error for finding that Father's treatment plan was appropriate under § 41-3-609(1)(f)(i), MCA. Because, as discussed below, we find harmless error in the District Court's findings regarding the treatment plan's success, we decline to review for plain error whether the plan was appropriate.

¶18 A district court may not find a treatment plan unsuccessful solely based on a finding that a parent's incarceration rendered the plan unsuccessful. *In re J.B.*, ¶ 19 (citing *In re A.T.*). In *In re A.T.*, ¶ 25, we held that the district court abused its discretion when it terminated the father's parental rights due to noncompliance with his treatment plan solely because he was incarcerated. We held that the Department did not demonstrate a good-faith effort to preserve the parent-child relationship and the family unit when it developed a treatment plan knowing that the parent was incarcerated, and then petitioned to terminate parental rights because of the parent's incarceration. *In re A.T.*, ¶ 24.

¶19 Father asserts that the District Court erred when it found that the treatment plan was unsuccessful because the court based its finding solely on Father's incarceration, contrary to our holdings in *In re A.T.* and *In re J.B.* He asserts that because all parties had knowledge of his incarceration at the time the treatment plan was approved by the court, it was error

for the court to conclude the plan was unsuccessful because of his incarceration and to terminate his parental rights on that basis.

¶20 The Department acknowledges that Father was incarcerated at the time his treatment plan was prepared but argues that incarceration was not the sole basis for the District Court's finding that the plan was unsuccessful. The Department further contends that when the treatment plan was adopted, Father had told the Department he would be released in four to six months. And it emphasizes the court's clear finding that Father's long-term incarceration and A.L.P.'s special needs made reunification not in the child's best interests. Father admitted that he was responsible for being in prison and absent from his daughter's life; thus, the Department argues, Father's own conduct led to the treatment plan's failure.

¶21 Father's case bears many similarities to *In re A.T.* The Department alleged in its petition that Father's parental rights should be terminated because he failed to comply with an appropriate court-ordered treatment plan; it was obliged to prove by clear and convincing evidence that the statutory criteria for § 41-3-609(1)(f), MCA, had been satisfied. *In re K.L.*, ¶ 14. Father's treatment plan, approved well after he was incarcerated, expressly stated that visitation was a required task, but the Department based its recommendation for termination on its conclusion that visitation was not viable because Father was incarcerated. Like in *In re A.T.*, the Department "developed the treatment plan with the knowledge that the father would remain incarcerated throughout the plan's applicable period." *In re A.T.*, ¶ 21. The District Court record is unclear when Father's

10

probation was revoked. We take judicial notice from the criminal record, however, that the First Judicial District Court revoked Father's suspended sentence and imposed a ten-year term of imprisonment in December 2017. *State v. J.T.P.*, No. BDC 2010-216 (Mont. First Judicial Dist. Court Dec. 8, 2017). The District Court ordered release of Father's criminal justice information on March 1, 2018, four months before it approved the treatment plan. Father also sent a letter to the Department's caseworker in May 2018, prior to the treatment plan's approval. He informed the Department that he was "sentenced back to prison and received all 10 years back" and would not be released for at least two years. Armed with this information, the Department reasonably should have known that his incarceration would prevent compliance with the visitation component of Father's plan.

¶22 The record makes clear that the District Court's finding under subsection (1)(f)(i) was grounded in Father's failure to complete visitation. After accepting Father's testimony that he completed certain treatment plan requirements, the court noted that he nonetheless had failed to complete the visitation requirement, which made his treatment plan unsuccessful. The District Court stated:

> The reason that they weren't completed is because you are incapable of completing those items in the treatment plan. You are incapable of visiting this child. It is very difficult to keep in contact with the Department as a result of your imprisonment. Your imprisonment has been – was judicially ordered.

In its termination order, the court noted that "[Father] has failed to maintain contact with the child and [Father] has been confined in long term confinement for over a year," and—on that basis—the treatment plan was unsuccessful.

11

¶23    Our holding in *In re A.T.* makes it clear that a court cannot find a treatment plan unsuccessful based solely on a parent's incarceration where, as here, the Department was aware of the parent's incarceration and proposed a treatment plan with the full knowledge that the parent was incarcerated.  We reasoned:

> DPHHS did not invoke § 41-3-609(4)(c), MCA, in its petition for permanent legal custody and termination of parental rights. DPHHS sought termination of the father's parental rights solely on the basis of § 41-3-609(1)(f), MCA. One of the State's own witnesses . . . agreed that the father complied with five of the six treatment plan obligations. Nevertheless, it appears that the District Court deemed the plan unsuccessful because of the father's long-term incarceration, a status known to DPHHS when it developed the plan. To develop a treatment plan with knowledge of a parent's incarceration status, exact compliance with the plan, and then terminate the parental rights because the incarceration rendered the plan unsuccessful does not suggest a good faith effort by DPHHS to preserve the parent-child relationship and the family unit.

*In re A.T.*, ¶ 24.  Given the same statutory basis for the Department's petition here, a similar procedural history, and the District Court's analysis, we conclude that the court erred in finding that Father failed to successfully complete his treatment plan resulting solely from his incarceration.

¶24    The Department asserts for the first time on appeal that a treatment plan was not needed in this instance.  Section 41-3-609(4)(c), MCA, exempts the treatment plan requirement if "the parent is or will be incarcerated for more than 1 year and reunification of the child with the parent is not in the best interests of the child."  The Department may seek exemption from the treatment plan requirement during the district court proceedings, but it may not raise the exemption for the first time on appeal.  *See In re A.T.*, ¶ 25 ("Further, DPHHS did not raise § 41-3-609(4)(c), MCA, in its petition for . . . termination

of parental rights. Accordingly, that provision cannot support termination of the father's parental rights."). Like in *In re A.T.*, Father here was given a treatment plan and led to believe that completing it would prevent termination of his parental rights. The Department made the choice to give him a treatment plan under § 41-3-609(1)(f), MCA. It is not fair for the Department to first assert, on appeal, that a treatment plan was not even necessary under § 41-3-609(4)(c), MCA. The facts that make subsection (4)(c) applicable were known to the Department at the time of the termination petition.

¶25 Importantly, when the Department seeks termination under § 41-3-609(1)(f), MCA, a district court may consider a parent's "present judicially ordered long-term confinement" in determining whether the conduct or condition rendering the parent unfit is likely to change within a reasonable time. Section 41-3-609(2)(d), MCA. If the parent is not in prison or facing extended incarceration when a child is removed, the Department certainly acts in good faith by proceeding with a treatment plan; in that case, the Department must make reasonable efforts to provide services and work with the parent toward the objectives of the treatment plan. Section 41-3-423(1), MCA. The Department also may revise a treatment plan in light of a parent's changed circumstances. *See In re M.A.E.*, 1999 MT 341, ¶ 10, 297 Mont. 434, 991 P.2d 972 (Department developed a second treatment plan after mother was incarcerated that specifically addressed her incarceration and tailored the treatment plan to her status). Here, however, Father's long-term incarceration was apparent for most of the proceedings. The Department neither sought to revise the treatment plan nor worked with Father on the tasks he could accomplish while

13

incarcerated (having a total of three calls with him during the life of the case); it seemingly recognized that Father's long-term incarceration would make it impossible for him to parent within a reasonable time. Under those circumstances, the Department appropriately should have moved the court to forego the treatment plan under § 41-3-609(4)(c), MCA.

¶26 Nonetheless, in matters involving abused and neglected children, a district court may protect the children's best interests despite procedural errors, if the error would have no impact upon the ultimate result. *In re M.S.*, 2014 MT 265A, ¶ 22, 376 Mont. 394, 336 P.3d 930 (citing *In re J.C.*, 2008 MT 127, ¶ 43, 343 Mont. 30, 183 P.3d 22; *In re F.H.*, 266 Mont. 36, 39, 878 P.2d 890, 892 (1994); *In re A.N.*, 2000 MT 35, ¶ 39, 298 Mont. 237, 995 P.2d 427). "No civil case shall be reversed by reason of error which would have no significant impact upon the result; if there is no showing of substantial injustice, the error is harmless." *In re L.M.A.T.*, 2002 MT 163, ¶ 21, 310 Mont. 422, 51 P.3d 504 (citing *In re J.M.*, 2001 MT 51, ¶ 16, 304 Mont. 303, 21 P.3d 618).

¶27 In this case, unlike in *In re A.T.*, the District Court made express findings of fact to support the conclusion that a treatment plan was not necessary. The court's findings make it clear that, had the Department asserted § 41-3-609(4)(c), MCA, a treatment plan would not have been required. The District Court found that Father had been incarcerated for more than a year. It found further that A.L.P.'s serious ongoing medical issues require specialized training and care and that there was no evidence Father could assume such intensive care in the reasonable future. The District Court found that Father's ten-year incarceration would make him unavailable to parent A.L.P. Though Father represented to

the court that he would be eligible for parole, that possibility was speculative, and Father would not even see the parole board until eight to nine months after the termination hearing, at the very earliest. The District Court considered Father's long-term incarceration and weighed it against A.L.P.'s serious medical concerns when it found that it was in A.L.P.'s best interests to terminate Father's parental rights. These findings support the conclusion that the treatment plan exemption applied. We conclude that the court's erroneous finding that Father's treatment plan was unsuccessful is harmless in light of the fact that the District Court made express findings that rendered a treatment plan unnecessary. Even though the Department failed to assert the statutory exemption in its termination petition, reversing for this procedural error would have no impact on the ultimate result. *In re M.S.*, ¶ 22. On the record of this case, the District Court did not err in finding that termination would be in A.L.P.'s best interests and did not abuse its discretion in granting the Department's petition.

¶28 Lastly, Father asserts that he received ineffective assistance of counsel. He maintains that counsel was ineffective when he failed to introduce evidence relating to Father's chemical dependency evaluation and parenting classes; to challenge on cross-examination the Department's reasonable efforts at reunification; or to object to the appropriateness of the treatment plan. To determine whether assistance was effective, we review counsel's training, experience, and advocacy. *In re B.H.*, 2020 MT 4, ¶ 49, 398 Mont. 275, 456 P.3d 233 (citing *In re A.S.*, ¶ 26). Father makes no claim about counsel's training or experience.

¶29 We are not persuaded that counsel's advocacy here was ineffective. First, the District Court accepted Father's testimony regarding his completion of a chemical dependency evaluation and parenting classes. Second, the court based its finding that the conduct or condition rendering Father unfit was unlikely to change within a reasonable amount of time on Father's incarceration, which did not involve the Department's reasonable efforts. Finally, counsel's failure to object to the treatment plan's appropriateness is irrelevant given our holding that the court erred when it determined that the treatment plan was unsuccessful.

## CONCLUSION

¶30 The District Court erred when it based its finding that the treatment plan was unsuccessful solely on Father's incarceration. We hold that the error is harmless on the record presented in this case. The District Court did not abuse its discretion when it concluded that it was in A.L.P.'s best interests to terminate Father's parental rights. The order of termination is affirmed.

/S/ BETH BAKER

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ JIM RICE
/S/ INGRID GUSTAFSON

16