No. 05-262

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 299

IN THE MATTER OF
M.A.L., D.L., and T.L.,

　　　　Youths In Need Of Care.

APPEAL FROM:　　The District Court of the Eighth Judicial District,
　　　　　　　　In and For the County of Cascade, Cause BDJ 02-175-Y,
　　　　　　　　Honorable Julie Macek, Presiding Judge

COUNSEL OF RECORD:

　　　　　　For Appellant:

　　　　　　Vince van der Hagen, Office of Public Defender, Great Falls, Montana

　　　　　　For Respondent:

　　　　　　Honorable Mike McGrath, Attorney General; Tammy K. Plubell,
　　　　　　Assistant Attorney General, Helena, Montana

　　　　　　Brant Light, County Attorney; Sarah Corbally, Deputy County
　　　　　　County, Great Falls, Montana

　　　　　　　　　　　　　　Submitted on Briefs:　March 29, 2006

　　　　　　　　　　　　　　　　　　Decided:　November 21, 2006

Filed:

　　　　　　_____
　　　　　　　　　　　　　Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     D.L. appeals from the judgment of the Eighth Judicial District Court, Cascade County, terminating his parental rights.  We affirm.

¶2     We consider the following issues on appeal:

¶3     (1) Whether the District Court's application of §§ 41-3-609(1)(d) and 41-3-423(2)(a), MCA, was an unlawful retroactive application of the statutes?

¶4     (2) Whether the District Court abused its discretion by admitting a judgment of D.L.'s prior sexual offense conviction over the objection of D.L.?

¶5     (3) Whether the District Court incorrectly concluded that D.L.'s prior Texas conviction for indecency with a child constituted an "aggravated circumstance" under the statute?

¶6     (4) Whether the District Court abused its discretion when it terminated D.L.'s parental rights?

¶7     (5) Whether the District Court's findings of fact are clearly erroneous?

¶8     (6) Whether D.L. sufficiently preserved his equal protection argument for appeal?

## BACKGROUND

¶9     D.L. is the natural father of M.A.L., born on November 25, 1999, D.L.,[1] born on November 1, 2000, and T.L., born on November 19, 2001.  The children have been in the State's custody since September 11, 2002, and were adjudicated as youths in need of care, within the meaning of § 41-3-102, MCA, by written order on September 26, 2002.

---

[1]D.L. and his son have the same initials. Thus, when we refer to D.L. the child, we will denote such.

¶10    In July 2002, the Montana Department of Public Health and Human Services (DPHHS) received a referral from Texas Child Protection Services (TCPS) stating that they had been involved with the children's birth mother, A.B.  TCPS purchased bus tickets to Great Falls for A.B. and her three children so she could leave the children's father, D.L., and not lose custody of the children at that time, as TCPS refused to permit A.B. to both remain with D.L. and keep her children.

¶11    The Eighth Judicial District Court, Cascade County, terminated A.B.'s parental rights on April 27, 2004.  The court extended temporary legal custody to DPHHS while it investigated how to proceed with respect to D.L.  While DPHHS investigated D.L., it learned that he had a prior conviction for a sexual offense involving a minor in Texas.  DPHHS filed a petition to terminate D.L.'s parental rights on May 19, 2004.  Additionally, it requested the court to determine that based upon the existence of an aggravated circumstance, pursuant to § 41-3-423, MCA, it was not necessary for DPHHS to provide rehabilitative services to D.L.  On September 20, 2004, D.L. filed a motion to dismiss the termination petition.  D.L. argued that finding an aggravated circumstance based upon a sexual offense conviction that predates the passage of § 41-3-423, MCA, would constitute an unlawful retroactive application of the statute.  On September 21, 2004, the State filed a brief in response to D.L.'s motion to dismiss.  The State argued that since § 41-3-423, MCA, was in existence at the inception of the action, it was not an unlawful retroactive application of the statute.

¶12    The District Court conducted a hearing on D.L.'s motion to dismiss and thereafter denied the motion by written order on September 28, 2004.  The court reasoned that since

3

§ 41-3-423, MCA, was in effect at the time the State initiated the youth in need of care action, it was appropriate to apply the statute to D.L. The court determined that the State correctly relied upon D.L.'s 1985 conviction to establish an aggravated circumstance.

¶13 The court held the termination hearing on January 13, 2005, and allowed the State to introduce certified copies of a "Deferred Adjudication Order," a "Judgment Adjudicating Guilt," and an "Indictment of [D.L.] for the Offense of Aggravated Sexual Assault on a Child" from the State of Texas. The 252nd District Court of Jefferson County, Texas, indicted D.L. in August 1985. Count I of the indictment states that D.L.:

> [D]id then and there sexually assault [S.G.] . . . a person younger than seventeen (17) years of age and not the Defendant's spouse, by intentionally and knowingly causing the sexual organ of the Complainant to come in contact with the Defendant's sexual organ; and the Complainant was then and there younger than fourteen (14) years of age.

Count II of the indictment states, in part, that:

> [D.L.] hereinafter, the Defendant, did then and there with intent to arouse and gratify the sexual desire of the Defendant, have sexual contact by touching the breast of [S.G.] . . . and did then and there with the intent to arouse and gratify the sexual desire of the defendant, have sexual contact by touching the genitals of [S.G.], a child under the age of seventeen (17) years and not the Defendant's spouse.

In the deferred adjudication order for the offense of "Lesser Included: Indecency With A Child," dated April 28, 1986, the Texas court found:

> In the best interests of society and the Defendant, the Court, after hearing evidence finds that it substantiates the Defendant's guilt and defers further proceedings without entering an adjudication of guilt and places the Defendant on Probation for a period of six (6) years.

According to the certified copy of the judgment adjudicating guilt, which refers to the deferred adjudication order and which incorporates the "Motion to Revoke Unadjudicated

4

Probation," signed by the Texas court judge on April 17, 1987, the court revoked D.L.'s probation, due to his violation of the conditions of the probation, and imposed a punishment of a five-year commitment to the Texas Department of Corrections.

¶14    D.L. objected to the admission of the Texas court documents as hearsay, and also maintained that the documents did not establish that he was guilty of the offense of indecency with a child.  In addition, D.L. argued that even assuming he had been convicted of the offense of indecency with a child, that Texas offense would not meet the definition of an "aggravated circumstance" pursuant to § 41-3-423(2)(a), MCA.  D.L.'s counsel requested additional time to review the documents, and the court granted the request, continuing the hearing until January 20, 2005.

¶15    D.L. failed to appear for the hearing on January 20, 2005, but his counsel renewed his objection that the deferred adjudication order was hearsay and thus inadmissible.  The court ruled that the document was admissible under M. R. Evid. 803(22) as an exception to the general hearsay rule.  D.L.'s counsel further argued that the document was not relevant because a Texas conviction for indecency with a child was analogous to an indecent exposure conviction in Montana, thus not constituting an aggravated circumstance pursuant to § 41-3-423(2)(a), MCA, which was rejected by the District Court.

¶16    On February 1, 2005, the District Court entered written findings of fact, conclusions of law, and an order terminating D.L.'s parental rights to M.A.L., D.L.[2] and T.L.  The court found that pursuant to § 41-3-609(1)(d), MCA, D.L. had subjected a child

---

[2]The child.

to one of the circumstances listed in § 41-3-423(2)(a) through (2)(e), MCA, that being the aggravated circumstance of sexual abuse by reason of his adjudication of guilt for the offense of felony indecency with a child. The court also found that the children had been in the State's custody since September 11, 2002, twenty-nine of the past twenty-nine months, and, therefore, a presumption that the termination of D.L.'s parental rights was in their best interests had arisen pursuant to § 41-3-604, MCA (2003). The court granted permanent legal custody of the children to DPHHS with the right of DPHHS to appear in all future proceedings to consent to their adoption or guardianship. On February 18, 2005, D.L. filed a motion pursuant to M. R. Civ. P. 50(b) for judgment as a matter of law. The court denied this motion. D.L. appeals.

**STANDARD OF REVIEW**

¶17 We review a district court's conclusions of law to determine whether the court interpreted the law correctly. *In re A.J.E.,* 2006 MT 41, ¶ 21, 331 Mont. 198, ¶ 21, 130 P.3d 612, ¶ 21. "We review a district court's ruling on the admissibility of evidence for an abuse of discretion." *In re M.W.,* 2004 MT 301, ¶ 14, 323 Mont. 433, ¶ 14, 102 P.3d 6, ¶ 14 (citation omitted). "The determination of whether evidence is relevant and admissible is left to the sound discretion of the trial judge and will not be overturned absent a showing of abuse." *M.W.,* ¶ 14. The test for an abuse of discretion is whether the trial court acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice. *A.J.E.*, ¶ 21. This Court reviews a district court's findings of fact to determine whether the findings are clearly erroneous. *In re L.M.A.T.*, 2002 MT 163, ¶ 15, 310 Mont. 422, ¶ 15, 51 P.3d 504, ¶ 15.

6

A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or, if after review of the record, this Court is left with a definite and firm conviction that the district court made a mistake. *L.M.A.T.,* ¶ 15. We review a district court's ultimate decision to terminate parental rights for an abuse of discretion. *A.J.E.,* ¶ 21.

¶18    "[T]he best interests of the child are of paramount concern in a parental rights termination proceeding and take precedence over the parental rights." *A.J.E.*, ¶ 22. The party seeking to terminate the parental rights must demonstrate by clear and convincing evidence that the statutory requirements for termination have been met. *A.J.E.,* ¶ 22 (citation omitted).

## DISCUSSION

### Issue 1

¶19    ***Whether the District Court's application of §§ 41-3-609(1)(d) and 41-3-423(2)(a), MCA, was an unlawful retroactive application of the statutes?***

¶20    D.L. argues that the District Court erroneously concluded that the statutes were not retroactively applied. D.L. contends that by applying the statutory amendment, which became effective October 1, 1999, to an act that occurred thirteen or more years prior to the enactment is a retroactive application which violates § 1-2-109, MCA, and infringes on his vested, constitutional parental rights. D.L. notes that the pre-1999 version of § 41-3-609, MCA, did not give discretion to the court to terminate parental rights based solely upon the commission of a sexual offense by a parent. Instead, the pre-1999 version of § 41-3-609, MCA, required the court to give the parent the opportunity to complete a

7

court-ordered treatment plan, and thus application of the amended statute in this case gives the alleged commission of the sexual offense a different legal effect from that it had under the law when it occurred.

¶21 The State argues that the District Court correctly determined that §§ 41-3-609(1)(d) and 41-3-423(2)(a), MCA, were not retroactively applied to D.L. because the statutes existed at the inception of the youth in need of care action. The State maintains that applying an amended statute to a factual situation occurring prior to the amendment is not a retroactive application. Moreover, the State contends that it was not D.L.'s prior conviction that caused DPHHS to intervene and file a youth in need of care action in the first place; rather, it was only after the children's adjudication and their placement in foster care that D.L.'s prior sexual offense became relevant. Alternatively, the State argues that even if the statutes were retroactively applied to D.L.'s circumstances, such retroactive application was appropriate because the statutes are remedial in nature.

¶22 Section 41-3-609(1)(d), MCA (2003), states, in relevant part, as follows:

> The court may order a termination of the parent-child legal relationship upon a finding established by clear and convincing evidence . . . that any of the following circumstances exist:
> . . .
> (d) the parent has subjected a child to any of the circumstances listed in 41-3-423(2)(a) through (2)(e)[.]

In turn, the circumstances listed in § 41-3-423(2)(a), MCA (2003), include "aggravated circumstances, including but not limited to abandonment, torture, chronic abuse, or sexual abuse or chronic, severe neglect of a child[.]" Section 41-3-102(22)(a), MCA (2003), defines sexual abuse as "the commission of sexual assault, sexual intercourse

8

without consent, indecent exposure, deviate sexual conduct, sexual abuse, ritual abuse, or incest, as described in Title 45, chapter 5."

¶23　Generally, DPHHS must make reasonable efforts to reunite a family after the children have been removed from the home. *See* § 41-3-423(1), MCA. However, pursuant to the operation of § 41-3-609(1)(d), MCA, DPHHS does not need to make reasonable efforts to provide preservation or reunification services if the court finds that the parent has subjected a child to any of the aggravated circumstances listed in § 41-3-423(2)(a), MCA.

¶24　As a general rule, statutes cannot be applied retroactively unless expressly so declared by the Montana legislature. Section 1-2-109, MCA. A retroactive law is one "which takes away or impairs vested rights acquired under existing laws or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions already passed." *Porter v. Galarneau*, 275 Mont. 174, 183, 911 P.2d 1143, 1148-49 (1996) (citing *Continental Oil Co. v. Montana Concrete Co.,* 63 Mont. 223, 207 P. 116 (1922)). A retroactive law is one which "gives a transaction a different legal effect from that which it had under the law when it occurred." *Saint Vincent Hosp. v. Blue Cross*, 261 Mont. 56, 60, 862 P.2d 6, 9 (1993). However, "[a] statute does not operate retroactively merely because it is applied to conduct occurring prior to its enactment." *Carelli v. Hall*, 279 Mont. 202, 210, 926 P.2d 756, 761 (1996) (citing *Porter*, 275 Mont. at 183, 911 P.2d at 1148).

¶25　This Court has held that "an amended statute which is applied to a factual situation which occurred prior to the enactment of the amendment is not viewed as retroactive in

9

application." *Stiffarm v. Furois*, 217 Mont. 335, 338, 704 P.2d 75, 77 (1985). In *Stiffarm*, Joseph Stiffarm (Stiffarm) was arrested on February 5, 1984, for driving under the influence of alcohol, and refused to submit to a chemical test to determine the alcohol concentration on his breath. Stiffarm had also previously refused the test in March 1982. Effective October 1, 1983, the Legislature had amended § 61-8-402, MCA, requiring the revocation of a driver's license for one year upon a second or subsequent refusal to submit to a chemical test within five years of a previous refusal. Based on the amended statute, Stiffarm's license was revoked for one year. Stiffarm argued that the revocation was improper because only one of the offenses upon which it was based occurred after the effective date of the statutory amendment. This Court rejected the argument, concluding that application of the new statute was not impermissibly retroactive:

> No sanction was imposed [by the new statute] on the first refusal occurring prior to the effective date. Rather, it served as a condition for imposing the one-year revocation for the subsequent refusal. The statute requires revocation of appellant's license in response to his refusal in February of 1984 because it was a repetitive refusal.

*Stiffarm*, 217 Mont. at 337-38, 704 P.2d at 77. Similarly, in the present case, no additional sanction was imposed on D.L.'s 1985 conviction by enactment of the new statute alone. Rather, the 1985 conviction was made a condition for termination of D.L.'s parental rights in the event D.L. subsequently neglected his children and thereby necessitated the filing of an abuse and neglect petition.[3]

---

[3]Termination of parental rights under § 41-3-609(1)(d), MCA, may only be ordered following the filing of a petition alleging the child has been abused or neglected. *See* §§ 41-3-607(1), 41-3-422(1)(a) and (10), and 41-3-602, MCA.

¶26 D.L. further argues that the application of the statutes affects a "vested right," and is thus retroactive in nature. A vested right is one that so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent. Black's Law Dictionary 1324 (7th ed. 1999). It is well-established in Montana that a parent's right to care and custody of his child is a fundamental liberty interest which must be protected by fundamentally fair procedures. *L.M.A.T.,* ¶ 33. However, in a parental rights termination proceeding, the best interests of the child are of paramount concern and take precedence over the rights of the parent. *A.J.E.*, ¶ 22. The constitutional protection surrounding family rights is tempered by the State's *parens patriae* responsibility to protect the welfare of the children. *Parens patriae* traditionally refers to the role of the state as sovereign or guardian of persons who are under a legal disability, such as juveniles, and stands for "the principle that the state must care for those who cannot take care of themselves, such as minors who lack proper care and custody from their parents." *Matter of S.L.M.,* 287 Mont. 23, 39, 951 P.2d 1365, 1375 (1997) (citing Black's Law Dictionary 1114 (6th ed. 1990)). Section 41-3-101, MCA (2003), states the policy of the state with regards to the welfare of children:

> (1) It is the policy of the state of Montana to:
> (a) provide for the protection of children whose health and welfare are or may be adversely affected and further threatened by the conduct of those responsible for the children's care and protection;
> . . . .
> (4) In implementing the policy of this section, the child's health and safety are of paramount concern.

Title 41, Chapter 3 of the MCA provides procedures by which the State may become involved in the care and custody of children in Montana and when the State may remove

11

a child from the parent's custody or terminate the legal parent-child relationship. *See generally* Title 41, Chapter 3, parts 3, 4, and 6, MCA. Under these provisions, the child's custody may be transferred from a natural parent to the State or other third party upon a court order entered after a finding that the child is a youth in need of care. Section 41-3-438(3), MCA (2003). A youth in need of care determination must be based on a finding that the child is abused, abandoned, or neglected. Section 41-3-102(29), MCA (2003). In such a case, the State can intervene without the parent's consent, and, upon clear and convincing proof, a parent determined by a court of law to be unfit, as defined in § 41-3-609, MCA, must yield his or her vested right in the care and custody of his or her child.

¶27     In these proceedings, D.L.'s prior conviction did not require or inevitably lead to his children being abused or neglected and an abuse and neglect petition being filed. Rather, his prior conviction only became relevant as an independent ground for DPHHS to petition for termination of D.L.'s parental rights after his children were abused and neglected. A further reason why the application of the amended statutes does not necessarily "give the transaction a different legal effect from that which it had under the law when it occurred," as D.L. argues, is because D.L. was not even a parent in 1985, when he committed the crime in Texas. The amended statutes became effective on October 1, 1999, and D.L.'s first child, M.A.L., was born on November 25, 1999. Thus, as of October 1, 1999, D.L. was on notice, even before his children were born, that his 1985 conviction would present a basis for the termination of his parental rights in the event his children became abused or neglected.

12

¶28 The District Court relied on persuasive authority from other jurisdictions to support its conclusion that §§ 41-3-423(2)(a) and 41-3-609(1)(d), MCA, were appropriately applied to D.L. The Court of Appeals of New York, in *In re Marino S.*, 795 N.E.2d 21 (N.Y. 2003), addressed the retroactive application of a statute which provided an aggravated circumstance as grounds for termination of parental rights. There, the State instituted child abuse proceedings against the parents in August 1997, and filed petitions to terminate parental rights in September 1998. In February 1999, during the pendency of the abuse and termination proceedings, New York passed the Adoption and Safe Families Act (ASFA), and subsequently brought a motion in the underlying abuse proceeding for a finding of "aggravated circumstances," a term introduced by ASFA. The effect of a finding of aggravated circumstances is to dispense with the requirement that an agency responsible for having placed the children in foster care or seeking to terminate parental rights exercise diligent efforts to reunite the parents with the children. The parents challenged the retroactive application of ASFA to their pending proceedings insofar as their termination petitions were amended to include a cause of action for severe abuse based on a felony sex offense. The court determined that the ASFA should be applied retroactively, "[b]ecause the statute is remedial in nature and does not impair vested rights . . . ." *Marino S.*, 795 N.E.2d at 26.

¶29 We simply note that the facts in *Marino S.* are different from those in the case at hand because *Marino S.* truly does involve the retroactive application of the New York statute, since the termination proceeding was in progress when the statute was amended. The difference here is that the statute was amended before the termination proceedings

13

were even begun. Our concern here is only the application of the statutory provisions to factual events *preceding* the effective date of the statute. Support for our holding herein can be found in the following cases, wherein courts have held that the provisions of the ASFA, or implementing state statutes, were properly applied to facts predating the effective date of the statute and that no improper retroactive application occurred as a result.

¶30    The Supreme Court of Texas, in *In re A.V.,* 113 S.W.3d 355 (Tex. 2003), held that termination of a father's parental rights based on the length of incarceration of the father, convicted prior to the enactment of a statute allowing length of incarceration to be used as a legal basis for the termination of parental rights, did not violate the prohibition against retroactive application of the law. The father argued that the statute was unconstitutionally retroactively applied to him, and because the statute was not enacted until 1997, his pre-1997 criminal conviction and imprisonment could not be used to satisfy the subsection's elements. The court concluded that the statute did not constitute an additional punishment for the father's criminal conduct, but rather focused on the father's future imprisonment and inability to care for the child, and noted the State's duty to protect the safety and welfare of its children and the policy of intervening in the parent-child relationship when necessary. *A.V.,* 113 S.W.3d at 361.

¶31    Likewise, the California Court of Appeals in *In re Joshua M.,* 66 Cal. App. 4th 458 (1998), held that a denial of reunification services to a father under a statute permitting such denial when the parent was previously unsuccessful in unifying with the minor's sibling or unsuccessful in treatment of a long-standing substance abuse problem

14

did not constitute an unfair retroactive application of a newly created statute, even though the circumstances that activated the statute occurred before its effective date. The California court stated:

> "It is well settled that '[a] statute does not operate retroactively merely because some of the facts or conditions upon which its application depends came into existence before the enactment.' [Citation.]" (*Armstrong v. County of San Mateo* (1983) 146 Cal.App.3d 597, 613, 194 Cal.Rptr. 294).
>
> The statute's reliance upon antecedent events or conduct is analogous to recidivism provisions in the Penal Code, such as the "Three Strikes" law and other habitual offender laws, that enhance punishment because the defendant has committed other crimes in the past.

*Joshua M.*, 66 Cal. App. 4th at 469. *See also In re Guardianship of B.L.A.,* 753 A.2d 770 (N.J. Super. Ch. 2000) (in a proceeding to determine whether the New Jersey Department of Youth and Family Services (DYFS) was required to provide reasonable efforts to reunify a child with a parent, reliance by DYFS on events which occurred prior to the effective date of the governing statute did not improperly give retroactive effect to the statute); *In re Sheneal W. Jr.,* 728 A.2d 544 (Conn. Super. 1999) (new statutory provision could be applied retroactively to an assault conviction by the parent that occurred prior to the effective date of the statute); *Smith v. Doe*, 538 U.S. 84, 123 S. Ct. 1140 (2003) (requiring sex offenders who were convicted before the passage of the Alaska Sex Offender Registration Act to comply with its provisions did not violate the prohibition against retroactive application of the law because the Act is non-punitive in intent and effect).

¶32 In summary, §§ 41-3-423(2)(a) and 41-3-609(1)(d), MCA, went into effect in 1999. DPHHS initiated the termination proceeding against D.L. on September 13, 2003. Thus D.L. was on notice that his prior Texas conviction for a sexual offense against a child could be used as an aggravated circumstance to justify grounds for termination of his parental rights if he allowed his children to be abused and neglected. We conclude that applying the statutes to the conviction which occurred prior to the effective date does not constitute an unlawful retroactive application of §§ 41-3-423(2)(a) and 41-3-609(1)(d), MCA.

**Issue Two**

¶33 *Whether the District Court abused its discretion by admitting a judgment of D.L.'s prior sexual offense conviction over the objection of D.L.?*

¶34 D.L. argues that the District Court erroneously admitted the certified copy of the Judgment Adjudicating Guilt pursuant to the hearsay exception set forth in M. R. Evid. 803(22). D.L. contends that the exception in M. R. Evid. 803(22) does not apply because it cannot be determined from the document whether the Texas court accepted a *nolo contendere* plea, which is excluded by the rule. Furthermore, D.L. argues that the judgment must show the essential facts necessary to sustain the judgment or evidence must be introduced to show such facts, or else the plain meaning of M. R. Evid. 803(22) is violated.

¶35 The State responds that the exception does apply because D.L. clearly entered a guilty plea, not a *nolo contendere* plea. The State further argues that it was not required

to prove the underlying facts of D.L.'s criminal conviction or offer more than the certified copy of the conviction. We agree with the State.

¶36 M. R. Evid. 803(22) provides the following exception to the hearsay rule even though the declarant is available as a witness:

> *Judgment of Previous Conviction.* Evidence of a final judgment, entered after a trial or upon a plea of guilty (but not upon a plea of nolo contendere), adjudging a person guilty of a crime punishable by death or imprisonment in excess of one year, to prove any fact essential to sustain the judgment, but not including, when offered by the prosecution in a criminal prosecution, judgments against persons other than the accused. The pendency of an appeal may be shown but does not affect admissibility.

¶37 The judgment adjudicating guilt specifically states that D.L., after being fully advised by the court and waiving his constitutional rights, entered a guilty plea. There is no evidence suggesting that he entered a *nolo contendere* plea. In criminal appeals, this Court has consistently held that "prior convictions are presumptively valid, and a defendant who challenges the validity of his prior conviction during a collateral attack has the burden of producing direct evidence of its invalidity." *State v. Anderson*, 2001 MT 188, ¶ 20, 306 Mont. 243, ¶ 20, 32 P.3d 750, ¶ 20 (citation omitted). Further, this Court has held that when DPHHS relied upon a prior conviction to establish an aggravated circumstance, it was not required to present evidence of the circumstance of the conviction. *L.M.A.T.,* ¶ 36. Here, the certified copy of the judgment adjudicating guilt was properly admitted under M. R. Evid. 803(22), and the State only needed to present the certified copy as evidence of the conviction. We conclude that the District Court did not abuse its discretion when it admitted the judgment adjudicating guilt into evidence as proof of an aggravated circumstance pursuant to § 41-3-423(2)(a), MCA.

17

## Issue Three

¶38 *Whether the District Court incorrectly concluded that D.L.'s prior Texas conviction for indecency with a child constituted an "aggravated circumstance" under the statute?*

¶39 D.L. argues that the District Court incorrectly concluded that his prior conviction in Texas for indecency with a child constituted an "aggravated circumstance" under § 41-3-423(2)(a), MCA. D.L. contends that the Texas crime of indecency with a child is analogous to the Montana crime of indecent exposure, under § 45-5-504, MCA. He also argues that the State did not introduce clear and convincing evidence that the crime committed in Texas would constitute "sexual abuse" as defined by Montana law.

¶40 The State argues that an aggravated circumstance includes subjecting a child to sexual abuse, and notes that the definition of sexual abuse in Montana law includes indecent exposure.[4] It contends that the language of the statutes is clear and unambiguous, and thus the District Court correctly concluded that the Texas offense clearly constitutes an aggravated circumstance.

¶41 The District Court rejected D.L.'s distinction and concluded that when a court properly finds that a parent has committed an act described in § 41-3-423(2)(a), MCA, then § 41-3-609(1)(d), MCA, grants the court the authority to terminate the parent's parental rights. The District Court's interpretation is not arbitrary and is based on the

---

[4]We address only the State's argument that because D.L. acknowledges that the Texas crime of indecency with a child is at least the equivalent of the Montana crime of indecent exposure, which would constitute sexual abuse under Montana statute, it constitutes an aggravated circumstance. The State did not argue which other Montana offenses would be equivalent to the Texas offense of which D.L. was convicted, and thus we do not reach that issue.

18

plain language of the statutes, which are clear and unambiguous. As set forth earlier, § 41-3-423(2)(a), MCA, provides that an aggravated circumstance includes subjecting a child to sexual abuse. Section 41-3-102(22)(a), MCA (2003), defines sexual abuse as "the commission of sexual assault, sexual intercourse without consent, indecent exposure, deviate sexual conduct, sexual abuse, ritual abuse, or incest . . . ."

¶42 In *L.M.A.T.,* the District Court admitted copies of the father's "Judgment and Sentence and Warrant of Commitment" from Washington State, which provided "clear and convincing" evidence that the father was convicted of attempted rape of a child in the second degree. *L.M.A.T.,* ¶ 35. This Court held that the plain language of § 41-3-403(2)(a), MCA (1999) (now § 41-3-423(2)(a), MCA), allows a court to conclude that preservation or reunification services are not required if it finds that any of the criteria in the statute are met. We determined that "the court made the necessary finding that [the father's] conviction of attempted rape of a child in the second degree qualified as 'subject[ing] a child to aggravated circumstances,'" and that § 41-3-403(2)(a), MCA (1999) (now § 41-3-423(2)(a), MCA) includes "sexual abuse" of a child as an example of an aggravated circumstance. *L.M.A.T.,* ¶ 36. Thus, "a conviction for attempted rape of a child met this definition and the District Court's findings were not clearly erroneous." *L.M.A.T.,* ¶ 36.

¶43 The facts of *L.M.A.T.* are similar to the case at hand. D.L. has an out-of-state conviction for the sexual abuse of a child. As this Court previously articulated, "we must follow the ubiquitous rule under § 1-2-101, MCA, that it is the obligation of the reviewing court, in interpreting a statute or an Act of legislation, to simply ascertain and

19

declare what is in terms or in substance contained therein, not to insert what has been omitted or omit what has been inserted." *Montana Power Co. v. Public Service Com'n,* 2001 MT 102, ¶ 26, 305 Mont. 260, ¶ 26, 26 P.3d 91, ¶ 26 (citation omitted). Since the definition of sexual abuse includes indecent exposure, and D.L. was convicted of at least the equivalent of indecent exposure in Texas, the District Court correctly concluded that D.L. subjected a child to an aggravated circumstance pursuant to § 41-3-423(2)(a), MCA.

### Issue Four

¶44 *Whether the District Court abused its discretion when it terminated D.L.'s parental rights?*

¶45 D.L. argues that the District Court abused its discretion by terminating his parental rights based on the commission of a crime that occurred in 1985 and which if committed in Montana would have been a misdemeanor. D.L. contends that the distinction between a misdemeanor and a felony fundamentally relates to the threat level an offender poses to his or her child and thereby relates to whether or not it is reasonable to attempt reunification of the parent and child.

¶46 The District Court terminated D.L.'s parental rights based on §§ 41-3-423(2)(a) and 41-3-609(1)(d), MCA. As stated earlier, these statutes allow termination of parental rights based on the finding of an aggravated circumstance against a child which includes sexual abuse. The court properly admitted D.L.'s Texas conviction of indecency with a child, and this constituted an aggravated circumstance.

¶47 D.L. claims that the District Court terminated his parental rights "solely" because of his conviction for sexual abuse of a child. However, this is incorrect. In addition to

20

the above evidence, § 41-3-604(1), MCA (2003), entitled "[w]hen petition to terminate parental rights required," presumes that if a child has been in foster care for fifteen of the most recent twenty-two months, it is in the best interests of the child to terminate the parental rights. D.L. does not dispute that M.A.L., D.L.,[5] and T.L. have been in the State's care and custody since September 11, 2002—a period of twenty-eight consecutive months to the date of his termination hearing on January 20, 2005. D.L. did not have any significant contact with his children for more than three years. In addition to being adjudicated guilty of the offense in Texas, D.L. failed to complete his court-ordered sex offender treatment plan. The Texas Child Protective Services agency refused to allow A.B. to both remain in Texas with D.L. and keep the children. There was also evidence in the record that M.A.L. claimed that D.L. sexually abused her.

¶48   This evidence clearly establishes that maintaining their current placement in a foster home best serves the children's physical, mental, and emotional conditions and needs. There is substantial evidence to support the District Court's findings regarding termination, and it did not abuse its discretion when it terminated D.L.'s parental rights.

### Issue Five

¶49   *Whether the District Court's findings of fact are clearly erroneous?*

¶50   D.L. argues that the District Court's findings of fact are not supported by substantial credible evidence and are clearly erroneous. First, D.L. asserts that no evidence was introduced at the hearing to support the court's findings of fact numbered (1) through (4). Finding (1) identified D.L. as the natural father of the children. D.L.

---

[5]The child.

initiated contact with the court by written letter on September 27, 2002, when he first became aware of the youth in need of care action and identified himself as the children's father. Since this letter was in the record before the court, the court was clearly in a position to make such a finding. Finding (2) identifies the date that the court adjudicated the children as youths in need of care. The District Court is the same court that adjudicated the youths in September 2002, the adjudicatory order is part of the record, and thus this finding is supported by substantial credible evidence. Finding (3) is based upon the District Court's uncontested findings of fact from the termination hearing of the mother, A.B. Similarly, Finding (4) states when the court terminated the mother's parental rights, and this termination order is also part of the District Court's record.

¶51 Second, D.L. argues that the court's findings numbered (5) through (11) are erroneous because there was no evidence presented that the documents from Texas concerning the prior conviction were actually referring to him. However, the certified documents all identify and name D.L. as the defendant. Thus it was appropriate for the court to enter these findings. D.L. also claims that these findings are insufficient because the documents the court relied on did not state facts proving that sexual abuse as defined by Montana law occurred. However, the certified copy of D.L.'s adjudication of guilt from the Texas court clearly establishes that D.L. was convicted of a felony sexual offense against a child. D.L. claims that there was no evidence to support the court's Finding (12), which stated that the children had been in the custody of DPHHS since September 11, 2002. This fact is also in the court's record.

¶52 Third, D.L. argues that Finding (17) is incorrect in stating that the "above made findings of fact have been proven by clear and convincing evidence," and he contends that the Texas court documents do not provide clear and convincing evidence that termination of parental rights is appropriate. This Court has explained that:

> [C]lear and convincing proof is simply a requirement that a preponderance of the evidence be definite, clear, and convincing, or that a particular issue must be clearly established by a preponderance of the evidence or by a clear preponderance of proof. This requirement does not call for unanswerable or conclusive evidence. The quality of proof, to be clear and convincing, is somewhere between the rule in ordinary civil cases and the requirement of criminal procedure—that is, it must be more than a mere preponderance but not beyond a reasonable doubt.

*L.M.A.T.*, ¶ 33 (citing *In re E.K.,* 2001 MT 279, ¶ 32, 307 Mont. 328, ¶ 32, 37 P.3d 690, ¶ 32 (citation omitted)). It is the State's burden to prove by clear and convincing evidence that an aggravated circumstance exists, and thus that the termination of parental rights is appropriate. Section 41-3-423(4), MCA. A certified copy of a prior conviction meets the definition of clear and convincing evidence to establish an aggravated circumstance. *L.M.A.T., ¶* 35. We conclude that the District Court's findings of fact are supported by substantial credible evidence, and its conclusion that D.L.'s prior conviction for a sexual offense against a child constituted an aggravated circumstance is supported by clear and convincing evidence.

**Issue Six**

*¶53     Whether D.L.  sufficiently preserved his equal protection argument for appeal?*

¶54 D.L. argues that §§ 41-3-423(2)(a) and 41-3-609(1)(d), MCA, are unconstitutional and violate the Equal Protection Clause of the United States and Montana Constitutions.

23

D.L. contends that the right of a parent to custody of his or her child is a fundamental constitutional right, and that strict scrutiny should be applied to any law that threatens that right. The State asserts that D.L. failed to challenge these statutes on equal protection grounds in the District Court, and thus his equal protection argument is not properly before this Court.

¶55 It is well-established that this Court will not address an issue presented for the first time on appeal. *In re T.E.,* 2002 MT 195, ¶ 20, 311 Mont. 148, ¶ 20, 54 P.3d 38, ¶ 20. We will not fault a District Court for failing to address statutory deficiencies that are not brought to its attention during the proceedings because doing so would encourage litigants to withhold objections rather than raise the issues appropriately in the District Court. *T.E.*, ¶ 23. As a result, it is necessary to resolve the State's threshold argument at the outset. The general rule for the necessity of presentation of issues in the lower court for preservation for appeal is:

> [W]here a party fails to raise an issue in the pleadings, does not present argument on the issue during the hearing on the merits of the case, does not move to amend the pleadings to conform to any evidence presented and raises the issue for the first time in a post-hearing memorandum which the district court does not address in its order, the issue has not been timely raised and may not be raised on appeal.

*Nason v. Leistiko*, 1998 MT 217, ¶ 18, 290 Mont. 460, ¶ 18, 963 P.2d 1279, ¶ 18 (citing *Marsh v. Overland*, 274 Mont. 21, 29, 905 P.2d 1088, 1093 (1995)).

¶56 D.L. raised his equal protection argument for the first time in a M. R. Civ. P. 50(b) motion made after the court entered judgment against him. The State responded to D.L.'s motion by contending that a M. R. Civ. P. 50(b) motion was not appropriate under the

24

Rules of Civil Procedure since a jury did not decide the issue of termination of D.L.'s parental rights, and even if the court found that it was applicable to the circumstances of D.L.'s case, he did not meet his burden for prevailing under the Rules of Civil Procedure. The District Court denied the motion and held that the motion "makes substantially similar arguments as those previously made to the Court. The Court has already thoroughly considered and rejected those arguments and will not reconsider them." Upon review of the hearing transcript, it appears D.L. briefly mentioned a constitutional due process argument during the hearing. However, the District Court did not address D.L.'s argument in its findings of fact, conclusions of law and order, and D.L.'s argument on appeal is that the statutes violate the Equal Protection Clause, which is an argument that he did not raise before the District Court.

¶57    M. R. Civ. P. 50(a) permits a party to move for judgment as a matter of law after the opposing party has been fully heard and prior to the submission of the case to the jury. If such a motion made at the close of evidence is denied, M. R. Civ. P. 50(b) allows the moving party to renew its motion within ten days after the court's entry of final judgment in the case. Here, D.L.'s M. R. Civ. P. 50(b) motion was not properly before the District Court because he was not "renewing" any M. R. Civ. P. 50(a) motion, and regardless, "[a] party cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion." *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003). In D.L.'s reply brief to his M. R. Civ. P. 50(b) motion, he alternatively attempted to change it to a M. R. Civ. P. 59(g) motion to alter or amend. However, the District Court did not address this

25

change in its order denying the motion. Regardless, D.L. could not have raised a new equal protection argument in a M. R. Civ. P. 59(g) motion either, because it is not intended to allow the parties to present the case under new theories, and cannot be used to raise arguments which could, and should, have been made before the judgment was issued. *Nelson v. Driscoll*, 285 Mont. 355, 360-61, 948 P.2d 256, 259 (1997).

¶58    We conclude that D.L. failed to timely raise this issue in the District Court and, therefore, cannot raise the issue on appeal. Thus, we decline to address whether the statutes in question violate the Equal Protection Clause of the United States and Montana Constitutions.

## CONCLUSION

¶59    For the foregoing reasons, the judgment of the District Court is affirmed.


/S/ JIM RICE

We concur:

/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS