DA 20-0498

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 222N

THOMAS JAMES BICK,

　　　　　Petitioner, Obligor, and Appellant,

　　v.

KATHLEEN JO JOHNSON,

　　　　　Respondent, Obligee, and Appellee,

　　and

STATE OF MONTANA EX REL. MONTANA
DEPARTMENT OF PUBLIC HEALTH AND HUMAN
SERVICES, CHILD SUPPORT ENFORCEMENT DIVISION,

　　　　　Respondent and Appellee.

APPEAL FROM:　　District Court of the Thirteenth Judicial District,
　　　　　　　　In and For the County of Yellowstone, Cause Nos. DV 19-1188 and
　　　　　　　　DR16-1241
　　　　　　　　Honorable Rod Souza, Presiding Judge

COUNSEL OF RECORD:

　　　　　For Appellant:

　　　　　　　　Thomas J. Bick, Self-Represented, Billings, Montana

　　　　　For Appellee Kathleen Jo Johnson:

　　　　　　　　Robert J. Waller, Attorney at Law, Billings, Montana

　　　　　For Appellee Montana Department of Public Health and Human Services, Child
　　　　　Support Enforcement Division:

　　　　　　　　Andrew Betson, Department of Public Health & Human Services Child
　　　　　　　　Support Division, Butte, Montana

Submitted on Briefs:  August 11, 2021

Decided:  September 7, 2021

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     This is a consolidated appeal of Thomas James Bick and Kathleen Jo Johnson's dissolution of marriage case and associated child support case.[1]  Bick appeals from the District Court's December 31, 2018 Findings of Fact, Conclusions of Law, Order and Decree of Dissolution (Decree) and two Qualified Domestic Relations Orders (QDROs). We affirm.

¶3     Bick and Johnson married in September 1987 and have two children together, H.B. and K.B.   The parties resided in Billings, Montana since their marriage.   In May 2016, Johnson told Bick that she had a job offer in Bozeman.   She moved to Bozeman on June 14, 2016, with H.B. and K.B.   Johnson signed a Petition for Dissolution of Marriage on June 13, 2016, before moving, and she filed the petition on October 24, 2016.  Bick was served on February 21, 2017, and he filed his response on March 8, 2017.  The District Court held a two-day trial and issued its Decree, dissolving the marriage on December 31, 2018.  In the Decree, the court used October 24, 2016—

---

[1] Bick has filed three separate Notices of Appeal.  This Court has consolidated the matters under Cause No. DA 20-0498.  The procedural history prior to the consolidation is irrelevant to the resolution of the issues presented on appeal.

the date Johnson filed the Petition for Dissolution of Marriage—to value the marital estate.

¶4 The District Court allowed Bick to keep the marital home and buy out Johnson's equity with an equalization payment. The District Court ordered Bick pay Johnson an equalization payment within ninety days of December 31, 2018. The payment was due March 31, 2019. Bick made the payment in full on October 21, 2020. At a September 2020 hearing on a motion to hold Bick in contempt for the equalization payment, the District Court heard credible testimony from Bick's bank that other circumstances prevented him from obtaining financing on the home. The District Court acknowledged Bick could not make the equalization payment without obtaining financing. The District Court excused Bick's untimely equalization payment and denied Johnson's motion to hold Bick in contempt but found post-judgment interest was the appropriate remedy. The District Court ordered Bick pay Johnson $11,676.59 in interest.

¶5 Regarding the children and related tax matters, the parties were operating under a parenting plan which called for alternating weekends. Bick opted not to enforce the plan for the sake of the children and to maintain consistency for the children and their extracurricular activities. The parties disagreed on how to file their 2017 taxes. Johnson advocated that each party elect married filing separately status, each claim one child as a dependent exemption, and each pay their own tax obligation or receive their own refund. Bick wanted the parties to file jointly to minimize the parties' tax liability and to share equally in any refund, liability, and tax preparation fee. With each party filing separately, Johnson received a refund and Bick owed a liability. Johnson testified at trial that she

4

had already filed H.B.'s Free Application for Federal Student Aid (FAFSA) in October 2017 using only her income and was concerned that altering the FAFSA (with a filing jointly status) would affect H.B.'s financial aid. She testified that filing married and jointly would result in the loss of a Pell Grant that covered half of H.B.'s tuition. In the Decree, the District Court specifically found that "Kathleen filed separately due to the impact on H.B.'s financial aid package."

¶6 The District Court held a hearing to resolve the tax issues on October 1, 2018. At the hearing, the District Court ordered the parties file married but separately. The court determined that Bick would claim H.B. as a dependent exemption and Johnson would claim K.B. In the Decree, the District Court explained that Johnson would claim K.B. because K.B. lived with Johnson. The court ordered Johnson pay Bick $500, recognizing the sizeable refund Johnson would receive as a result of the parties filing their taxes separately. The District Court added that any additional liability that Bick incurred *could* be accounted for in the equity payment and potentially be reduced, but it made clear it had not made a determination on the matter and the parties could argue their positions in their proposed findings and conclusions.

¶7 The Decree provided for the Montana Department of Health and Human Services Child Support Enforcement Division (CSED) to calculate the child support obligation. It further provided a monetary amount Bick was to be credited against any possible arrears, a start date of April 2017 for child support obligation, and a $100 per month variance from the child support calculation. The court specifically outlined the items for which Bick was to be credited for back pay in child support in its Finding of Fact Number 56.

5

The court determined that these expenses reflected Bick supporting K.B. and/or H.B. and their respective activities, and therefore he would receive a dollar-for-dollar credit. The court clarified that it would not credit Bick "for costs incurred to facilitate his parenting time or for gifts to the girls" and Bick would "not receive credit for hotel stays to watch K.B. play soccer because those items are addressed in the variance *infra*." The District Court explained that the variance "would assist [Bick] in paying for lodging and meals out to parent."

¶8 Johnson's attorney prepared the QDROs for Bick's Billings Clinic 403(b) Plan and his Billings Clinic Pension Plan. Bick was named the "Participant" in each QDRO and Johnson was named the "Alternate Payee." The final provision in each QDRO required Bick to pay the one-time fee for review of the QDRO. The one-time fee for each QDRO was $300. The parties stipulated to the court entering each QDRO. On November 6, 2019, the District Court signed the QDROs.

¶9 Three issues Bick raises on appeal ask this Court to overturn decisions the District Court made in the Decree. In an October 8, 2019 Order, this Court determined an appeal of the Decree was time-barred. This Court, however, is "predisposed to give pro se litigants considerable latitude in proceedings" so long as that latitude does not prejudice the other party. *First Bank (N.A.)-Billings v. Heidema*, 219 Mont. 373, 376, 711 P.2d 1384, 1386 (1986). After reviewing the issues raised on appeal and the records in the corresponding cases, we determine a review on the merits as to each issue is appropriate and that such review does not prejudice Johnson.

6

¶10    The first issue raised on appeal is whether the District Court erred in using October 24, 2016 to value the marital property. We review for an abuse of discretion a district court's determination of the valuation date for marital assets. *See In re Marriage of Wagner*, 208 Mont. 369, 380-81, 679 P.2d 753, 759 (1984). This Court reviews a district court's findings of fact to determine whether the findings are clearly erroneous. *In re M.A.L.*, 2006 MT 299, ¶ 17, 334 Mont. 436, 148 P.3d 606. Bick argues the District Court, without specific rationale, did not follow the general rule to value the parties' marital property at the time of dissolution and instead used the date Johnson filed the Petition for Dissolution, October 24, 2016. He argues the District Court arbitrarily assumed the parties' marriage was effectively over on this date and using this valuation date was erroneous because it was clear Johnson premeditated her filing to the prejudice of Bick. Bick argues the October 24, 2016 date is not relevant as a date of separation and is therefore arbitrary and the District Court ignored evidence of Johnson's pre-separation actions designed to deprive Bick of marital property.[2] He maintains that the District Court's decision resulted in an inequitable disposition of the marital estate because he continued the household upkeep, continued funding retirement, and paid household bills, medical bills, property taxes, and costs associated with refinancing the family home. Bick argues the District Court should have considered Johnson's pre-filing

_____

[2] In support of his claim that Johnson premeditated her filing to Bick's prejudice, Bick points to Johnson's decisions to leave Bick long before she told him, taking adult education classes, applying for employment, going through a three-month interview process and accepting employment, retaining counsel and signing the Petition for Dissolution prior to moving from Billings, and renting a Bozeman apartment—all without Bick's knowledge.

actions and selected June 14, 2016, the date Johnson moved to Bozeman, as the date of valuation.

¶11 "As a general rule, the value of the marital estate should be determined at or near the time of dissolution. However, the unique circumstances of marital relationships can modify this generally accepted date for the valuation of assets." *In re Marriage of Hochhalter*, 2001 MT 268, ¶ 17, 307 Mont. 261, 37 P.3d 665 (citations and internal quotation marks omitted). The point at which the marital relationship ended "for practical purposes" can be the relevant time for valuation of the marital estate— meaning the date of separation, rather than the date of dissolution, is determinative. *See In re Marriage of Geror*, 2000 MT 60, ¶¶ 11, 15-16, 299 Mont. 33, 996 P.2d 381 (the district court had not abused its discretion in valuing the marital assets at the time of separation rather than at the time of dissolution). Thus, a district court may elect to value assets at the time of separation or on any other date the court reasonably determines the marital relationship has ended for practical purposes. *Marriage of Geror*, ¶ 11. An equitable division of the marital estate is more important than the date on which the court values the parties' assets. *Schwartz v. Harris*, 2013 MT 145, ¶ 18, 370 Mont. 294, 308 P.3d 949.

¶12 Here, Bick wanted to value the estate as of June 14, 2016, the date of separation. Johnson wanted to value the estate as of April 30, 2018, the trial date. Johnson signed her Petition for Dissolution on June 13, 2016, but as the District Court noted, petitions for dissolution are not effective when signed and must be filed. Johnson filed her Petition for Dissolution on October 24, 2016. The District Court specifically found that it

"received no evidence the value of a marital asset or liability materially changed between June 14, 2016, and October 24, 2016, that would render valuing the marital estate on October 24, 2016, inequitable." This finding is not clearly erroneous. Accordingly, we conclude the District Court did not abuse its discretion in valuing the marital estate as of October 24, 2016.

¶13 The second issue raised on appeal is whether the District Court correctly concluded Johnson was entitled to post-judgment interest on the equalization payment. Whether a party is entitled to post-judgment interest is a conclusion of law that this Court reviews de novo. *In re Marriage of Debuff*, 2002 MT 159, ¶ 15, 310 Mont. 382, 50 P.3d 1070. "Once a person is liable for a money judgment, and payment is not made, the person entitled to the judgment is further entitled to a fair rate of interest." *Knudson v. Knudson*, 191 Mont. 204, 208, 622 P.2d 1025, 1027 (1981); *see* § 25-9-205, MCA. Post-judgment interest is a right under § 25-9-205, MCA, and is not a matter of discretionary award. *Warrington v. Great Falls Clinic, LLP*, 2020 MT 174, ¶ 10, 400 Mont. 360, 467 P.3d 567. A judgment bears interest from the date of its entry in the trial court even if it is subject to direct attack. *Resner v. N. Pac. Ry.*, 161 Mont. 177, 189, 505 P.2d 86, 92 (1973) (*overruled on other grounds*) (quotation marks omitted). On appeal, Bick does not dispute the amount of interest but only whether it was appropriate and equitable. He argues he was not informed by the District Court or his counsel that an appeal deadline began to run on December 31, 2018. Bick maintains that because the case was still proceeding on related matters, he assumed there was no final judgment yet. He further argues the District Court ordering him to pay

9

the interest was not equitable because he had been thwarted on multiple occasions to refinance the home and had kept the court informed of his failures.

¶14 The equalization payment was due on March 31, 2019, but was not paid until October 21, 2020. Contrary to Bick's arguments or assumptions, the order to make the equalization payment within ninety days was not contingent on the resolution of other motions, hearings, the parties' associated CSED case, or refinancing the marital home. Johnson's right to the money vested on the date the Decree was filed. *See In re Marriage of Mannix*, 242 Mont. 137, 139, 788 P.2d 1363, 1365 (1990). Accordingly, Johnson was entitled to post-judgment interest from that date. The District Court was correct concluding Johnson was entitled to post-judgment interest on the equalization payment.

¶15 The third issue raised on appeal is whether the District Court erred on issues of taxation. Bick argues the court erred on several counts related to the parties' taxes. First, he asserts the court erroneously found that filing 2017 taxes married and jointly would impact H.B.'s financial aid for college. Bick maintains that no evidence supported this finding and Johnson's assertion that it would impact H.B.'s tuition was false because he has paid 100 percent of H.B.'s college tuition. Bick further argues that by filing separately, the couple incurred thousands of dollars of additional state and federal tax they would not otherwise have had to pay, and Bick was burdened with the entire liability. Bick also argues the District Court erred by not accounting for the tax discrepancy with the equalization payment.

¶16 We first note that Bick did not object to or present evidence to contradict Johnson's testimony that altering H.B.'s FAFSA would negatively impact her financial

10

aid. More so, his argument that he has paid 100 percent of H.B.'s college tuition ignores the fact that financial aid assists a student in expenses beyond tuition (i.e., housing expenses and school supplies). The District Court's finding that filing jointly would negatively impact H.B.'s financial aid reflects that the court appropriately considered the parties' testimony and made a determination that was in the best interests of H.B. and the parties under the circumstances. The court's finding is not clearly erroneous. Further, the court did not err by not accounting for the tax discrepancy with the equalization payment. It was within the court's discretion to consider the parties' arguments on this matter, and we conclude that the court did not abuse its discretion.

¶17 Bick also argues the District Court erred when it allowed Bick no child dependents.[3] He maintains that he should not be penalized for prioritizing his children's best interests and not enforcing the parenting plan, while Johnson benefits by claiming K.B. as a dependent for tax years 2018, 2019, and 2020. This Court reviews a district court's award of a tax exemption for an abuse of discretion. *In re Marriage of Foreman*, 1999 MT 89, ¶ 41, 294 Mont. 181, 979 P.2d 193. The general rule under federal law is that the primary custodial parent is entitled to the dependency deduction. *See In re Marriage of Milesnick*, 235 Mont. 88, 93-94, 765 P.2d 751, 754-55 (1988). The parties do not dispute that Johnson was the primary custodial parent. The District Court

---

[3] The District Court did assign Bick a dependent; however, H.B. turned eighteen in February 2018 and graduated from high school in May 2018.

11

did not abuse its discretion in awarding the tax dependency deduction for K.B. to Johnson, K.B.'s primary residential custodian.[4]

¶18    The fourth issue raised on appeal is whether the District Court erred in crediting Bick for child support. We review for an abuse of discretion a district court's award of child support. *Albrecht v. Albrecht*, 2002 MT 227, ¶ 7, 311 Mont. 412, 56 P.3d 339. Child support awards necessarily require a district court to consider several factors in addition to the amount of income of each parent. *In re Marriage of Craib*, 266 Mont. 483, 492, 880 P.2d 1379, 1385 (1994). Bick argues the following expenses should have been credited toward Bick's back child support:

1. 04/19/2018 motel expenses for a K.B. soccer trip to Missoula
2. 05/20/2018 motel expenses for a K.B. soccer trip to Missoula
3. 06/10/2018 motel expenses for a K.B. soccer trip to Kalispell
4. 08/07/2017 campground expenses K.B. climbing in Tetons

Bick argues these stays helped "facilitate parenting time between April 1, 2017, and July 11, 2018"—the eligible timeframe from which Bick could receive credit for back pay—and the expenses were not for Bick to go observe his daughter playing soccer, but rather, show Bick enabling his daughter to attend soccer matches and spend time with her father. The District Court, however, specifically determined that it would not credit Bick for "costs incurred to facilitate his parenting time or for gifts to the girls." As an example, the District Court specifically excluded hotel stays to watch K.B. play soccer because those expenses were addressed in the variance. The District Court did not give

---

[4] The District Court acknowledged that given the nature of K.B.'s activities, a parenting plan where Bick would parent K.B. in Billings every other weekend and during the summer could not occur. The court accounted for this by awarding Bick a variance in monthly child support.

12

Bick credit for such expenses because it gave Bick a variance from the child support amount calculated in accordance with the Montana Child Support Guidelines. The variance, as the District Court clarified, was intended to assist Bick in paying for lodging and meals out to parent. Even assuming the motel and campground expenses were expenses paid to enable K.B. to play soccer and spend time with Bick, such expenses cannot be credited toward child support. "The manner in which child support is to be used is left to the discretion of the custodial parent . . . ." *Williams v. Budke*, 186 Mont. 71, 75, 606 P.2d 515, 517 (1980). Child support is to be paid to the child's custodian and is not to be directly paid to the child or for a child's expense. *See Williams*, 186 Mont. at 75, 606 P.2d at 517. The District Court did not err by not crediting Bick for the motel and campground expenses.[5]

¶19 The fifth issue raised on appeal is whether the District Court erred in ordering Bick to pay the costs to divide his retirement accounts.[6] "The distribution of marital property in a dissolution proceeding is governed by § 40-4-202, MCA, under which a

_____

[5] Bick also argues the District Court ordered Bick to continue paying for Johnson's phone, phone service, and car insurance not only through trial delays but also once child support had started and after the court closed the window on child support credits. The record does not support Bick's argument. The District Court clarified in an April 2020 Order that its Finding of Fact No. 56 in the Decree stating Bick "shall receive dollar-for-dollar credit for cell phone bills paid [and] automobile insurance for the children" referred to the children's cell phones and not Johnson's. Contrary to Bick's argument on appeal, he was not ordered to pay for Johnson's cell phone expenses nor her auto insurance. The District Court did not err by not crediting Bick in back child support for these expenses because money Bick spent on Johnson's cell phone and car insurance is not money he spent on the children, and thus cannot be credited as back pay on child support.

[6] Bick filed a Notice of Issues in December 2019 and brought this same issue to the District Court's attention but failed to request a remedy for or relief from the QDROs. The issue was not raised again before the District Court. The issue is not properly before this Court on appeal, but we again grant leniency because Bick is representing himself on appeal.

trial court is vested with broad discretion to distribute the marital property in a manner that is equitable to both parties." *Richards v. Trusler*, 2015 MT 314, ¶ 11, 381 Mont. 357, 360 P.3d 1126. The trial court must reach an equitable distribution and not necessarily an equal distribution. *Richards*, ¶ 11. "The district court's apportionment of the marital estate will stand unless there has been a clear abuse of discretion as manifested by a substantially inequitable division of the marital assets resulting in substantial injustice." *Richards*, ¶ 11. When issuing a decision in a dissolution action, a district court should consider the costs attendant to its division of marital property and, if necessary, adjust its apportionment to reflect an equitable distribution in accordance with the requirement of § 40-4-202, MCA. *In re Marriage of Debuff*, ¶ 28. Bick argues that the District Court blindly signed the QDROs without knowing each charged a $300 fee to effectuate Bick's 403(b) Plan and Bick's Pension Plan. Here, the District Court entered the QDROs as written by Johnson's attorney and as stipulated to by both Johnson and Bick. Bick did not object to the QDRO either before or after the District Court entered the orders. Moreover, he fails to show this was an abuse of discretion or that the District Court misapplied the law. Nothing in the record indicates the District Court abused its discretion by ordering Bick to pay the one-time fee to review each QDRO.

¶20 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

14

¶21 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ INGRID GUSTAFSON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR